Mr. Justice PAVES
 

 delivered the opinion of the court.
 

 In the view
 
 vile
 
 take of this, case we are not required to wade through the various statutes of Missouri, and the decisions ^of the courts of the State, in order-to’ determine whether or not the proceedings in question aré' valid; The.' complainant is not, in our opinion, in a position to invoke the aid of a court of equity to decide that question. ...The bill presents the case of a man who chose to neglect his private interests for the purpose of devoting his'time to' the destruction of the government, complaining that his creditors enforced the collection of their debts on a wrong theory .of his status, in consequence of entering the service of the enemy. There is no pretence, that the debts were not meritorious, of that the judgments were entered for a larger amount than he owed. The .real ground of complaint is that he was not an absent or absconding debtor, or a person whose residence was unknown, and was not, therefore, sub
 
 *18
 
 ' jeet.to the proceedings which were instituted against him. Whether this be-so or not it is easy enough to see, in the anomalous condition ofiaffairs existing at the time in Missouri, that creditors might honestly suppose that an individual leaving his’State to. destroy the government .under which his rights of property were acquired, did not intend to return to it, and,proceed to-collect their,debts under that supposition. The inquiry is whether a party acting in this way has stated such a case as entitles him to equitable, relief, because his creditors, who- ought to have been provided, for before he "left, mistook.the- condition he occupied, and treated him as a person who had permanently abandoned his home. •
 

 There’is no. averment that he did not .have
 
 actual notice
 
 of the proceediugs .against him in time, to protect his rights. And it is fair to infer, in the-absence of such an averment, that it could not be truthfully made. It is difficult to suppose., when he moved his family to Tennessee, that he did not communicate with friends in Missouri who were, acquainted with the true state of his affairs.-
 

 Besides,- if the proceedings against him w-ere irregular, .why-did he not seek his remedy under the statutes of Missouri, which concede to the party against whom judgment has been rendered on constructive notice only, the right to' come in' at any. time within- three years and file his petition1 for review. If this had been done, and the-State court had .permitted the cases to be reopened for the reasons set forth in-the bill, his remedy would Have been -complete, as the-bill charges the purchasers at the sale with notice of all. irregularities. It cannot be said that there was no opportunity of doing this, for the earliest judgment was in May, 1862, and both the others -in Nbvember, 1863, and the war. was substantially over in May, 1865, There is no averment of the' want of this opportunity, nor is the absence of it. aided by •the general allegation, without specification-of time or circumstance, that he could not with safety return to Nodaway 'County bn account of existing prejudices. This might be true, and yet,the opening, of the judgments obtained by an attorney, as his personal presence was not required for that
 
 *19
 
 purpose. It were easy enough before the/ three years expired to communicate with St., Louis by letter, or. even to go there, and it. is very certain that he could not have been under any apprehension while there of. being disturbed in the assertion of his legal rights.
 

 .But if the proceedings, instead of being irregular and. voidable, are null and void, as they are characterized in the bill, the remedy at law is complete, for there is in such a condition of things nothing in the way of the successful maintenance of an action of ejectment, which will result not only in the restoration of the lands, but also their rents and profits.
 

 Apart from all this; the maxim that he who seeks equity must do equity in the transaction in respect to which relief is sought, has not been observed by this complainant. While admitting his indebtedness, and that it has existed fqr.ten years or more, he do'es not make a tender in court of,what is justly due, although he is asking the court to set aside the proceedings by which this indebtedness was satisfied, on the ground of their absolute nullity. The willingness' to pay what is found to be due on the adjustment of the accounts for rents and profits is npt the sort of offer required of a person in the situation'of this complainant.
 

 Moreover, there has been an utter lack of personal diligence, which is required in such a ease as this in .order to bring into activity the powers of a court of équity. Equity' always refuses to interfere where there has been gross laches in the prosecution of rights» There is no artificial rule on such a subject, but each case as it arises must be determined by its own particular- circumstances. These proceedings were begun early in the war, and yet' no move is made to disturb them until July, 1871, more than six years after hostilities ceased. Why this delay ? The complainant says’ he. was in ignorance of them until recently, and that as-soon as he ascertained them he took steps to assert his fights. Such a general allegation will not suffice-to provoke the interposition of a court of equity. It will not do^to remain wilfully ignorant of a thing readily ascertainable. There has been
 
 *20
 
 free aud.uninterrupted communication between Tennessee .and Missouri sinop the war closed, and the courts everywhere'accessible'for the prosecution of any cause of action. Besidps, in’the very nature yf things, the complainant must have known soon after it occurred that an improved farm, once occupied by him, was in' the possession of adversé claimants.' .This was notice sufficient to put him on inquiry, and this inquiry would have resulted in ascertaining all the facts stated in the bill. There is no reason given for the delay,.nor any facts and circumstances on which any sátisfac-tory excuse can be predicated. :
 

 Here, thén, is the cáse of a party engaging in the rebellion without provision for his debts, to which’ there was no defence, asking a court of equity, after the lapse of many years without sufficient excuse for the delay, to interfere in his behalf because' his creditors adopted the wrong methods for the enforcement of their claims against him! And this, too, without any specific charge of fraud, except in the matter of the affidavits on which the proceedings were founded.
 

 Such a charge, under the circumstances, is too weak and unsatisfactory to relieve the complainant from the consequences of his own folly.
 

 . In any aspect of the case we think the demurrer was properly sustained, and the decree of the Circuit Court dismissing the bill is therefore ■
 

 Affirmed.