# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-3191

Catherine Cornell, Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

Bobby S. Moberly, Intervenor.

On Appeal from the Board of Veterans' Appeals

(Argued September 28, 2016,                    Decided December 12, 2016)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Mark D. Gore*, with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Richard A. Daley*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

*Douglas J. Rosinski*, of Columbia, South Carolina, for Bobby S. Moberly as intervenor.

Before DAVIS, *Chief Judge*, and KASOLD and LANCE, *Judges*.

DAVIS, *Chief Judge*: The appellant, attorney Catherine Cornell, appeals through counsel an April 27, 2015, Board of Veterans' Appeals (Board) decision that determined that VA had erroneously paid her $20,204.16 as attorney fees from an award of past-due total disability based on individual unemployability (TDIU) benefits awarded to U.S. Army veteran Bobby S. Moberly, the intervenor. The Court referred this case to a panel, with oral argument,[1] to determine whether the direct fee agreement dispute constitutes a simultaneously contested claim pursuant to 38 U.S.C. § 7105A, and if so, whether Mr. Moberly filed a timely Notice of Disagreement (NOD). For the reasons that follow, the Court will set aside the Board's erroneous factual finding that this case does

---

[1] Oral argument was held at Syracuse University College of Law in Syracuse, New York. The Court extends its appreciation to the law school for its hospitality.

not involve a simultaneously contested claim, and affirm the Board's ultimate conclusion that VA's payment of attorney fees to Ms. Cornell was improper.

# I. BACKGROUND

Mr. Moberly served on active duty in the U.S. Army from January 1952 to December 1953, including service in Korea. The VA regional office (RO) and the Board denied his claims for bilateral hearing loss and tinnitus, and he filed pro se a Notice of Appeal (NOA) at the Court. Ms. Cornell entered an appearance and agreed to represent Mr. Moberly before the Court on his hearing loss and tinnitus claims without charging an attorney fee or litigation expenses. *See Moberly v. Shinseki*, No. 10-0449 (Vet. App. July 27, 2010, Fee Agreement). Subsequently, the parties filed a joint motion to remand the case to the Board, which the Court granted on October 6, 2010.

In November 2010, Ms. Cornell and Mr. Moberly entered into a direct fee representation agreement stating that Ms. Cornell would represent Mr. Moberly in his claim for bilateral hearing loss and tinnitus before VA, the Board, and the Court. The scope of the agreement included representation on "all issues or claims in the case[,] including obtaining the maximum rating available . . . and any other claim or benefit reasonably raised by the evidence." Record (R.) at 437. The agreement provided for a contingency fee of 20% of all awards for past-due benefits and allowed VA to withhold the attorney fees from any lump sum payment owed to Mr. Moberly. R. at 437-38.

On remand, the Board granted Mr. Moberly disability benefits for bilateral hearing loss and tinnitus. In an August 23, 2011, decision, the RO implemented the Board's decision and assigned Mr. Moberly an 80% disability rating for bilateral hearing loss and a 10% disability rating for tinnitus, both ratings effective January 2006. The August 2011 rating code sheet noted that Mr. Moberly met "the schedular requirements for IU [individual unemployability], but there is no evidence showing he is unable to work due to these disabilities." R. at 314. Mr. Moberly's award for bilateral hearing loss and tinnitus resulted in retroactive benefits, and in a letter dated September 22, 2011, VA withheld $18,308.81 from Mr. Moberly's past-due benefits pursuant to the fee agreement with Ms. Cornell. In a letter dated November 2, 2011, Ms. Cornell wrote to Mr. Moberly to inform him that she had "closed [his] file at [her] office because at this time, there is no further work to be done on your claim." R. at 7; *see also* R. at 232.

2

On November 7, 2011, Mr. Moberly appointed Disabled American Veterans (DAV) his accredited representative.[2] DAV filed on behalf of Mr. Moberly a claim for an increased rating – TDIU – on January 25, 2012. In addition to filing the increased-rating claim, DAV submitted a letter dated February 3, 2012, from Dr. Michelle R. Franey, opining that Mr. Moberly was unable to work as a result of his severe hearing loss. On May 4, 2012, the RO granted Mr. Moberly TDIU benefits effective January 2006. In a May 8, 2012, decision mailed to Ms. Cornell with a copy to Mr. Moberly, the RO stated that the parties had filed a valid fee agreement and that the RO was withholding $20,204.16 for possible payment of fees. R. at 247. On July 24, 2012, the RO indicated that a check to Ms. Cornell for $20,204.16 would be released. On July 31, 2012, DAV submitted an NOD to the May 8, 2012, decision, and included a copy of an NOD Mr. Moberly completed that was dated May 11, 2012.

In December 2012, VA informed Ms. Cornell that she was paid the $20,204.16 in error and that she should settle this debt with Mr. Moberly. In January 2013, Ms. Cornell filed an NOD to the December 2012 VA letter. In response to Mr. Moberly's NOD, on February 1, 2013, the RO reviewed the file and determined that Ms. Cornell was not eligible for attorney fees because she was no longer Mr. Moberly's representative; the RO also informed Ms. Cornell that the NOD she filed to the December 2012 letter was invalid because a denial of fees was never issued but rather the December 2012 letter constituted a notification letter.[3] In February 2013, Ms. Cornell then filed an NOD to the RO's February 1, 2013, decision.

On September 6, 2014, VA issued an SOC recognizing Mr. Moberly's July 2012 NOD and Ms. Cornell's January and February 2013 NODs. The SOC characterized the issue on appeal as whether Ms. Cornell was entitled to payment of attorney fees of $20,204.16; the SOC concluded that she was not. In October 2014, Mr. Moberly requested that VA expedite the appeal, and mentioned the actions Ms. Cornell took after she had received the $20,204.16. R. at 8. Mr. Moberly stated:

---

[2] DAV is a nonprofit veterans service organization chartered by Congress and recognized by VA to prepare, present, and prosecute claims for benefits. DAV receives no fees or compensation for services rendered in connection with claims. *See* 38 U.S.C. § 5902.

[3] Ms. Cornell filed a petition for extraordinary relief in the nature of a writ of mandamus seeking an order from the Court to compel VA to issue a Statement of the Case (SOC) in response to the NODs filed in response to VA's decision of December 3, 2012, and February 1, 2013. *See Cornell v. McDonald*, No. 14-2559 (Vet. App. Aug. 2014 petition filed for issuance of SOC). On September 16, 2014, the Court granted Ms. Cornell's motion to dismiss her petition because VA had issued an SOC on September 6, 2014.

> The appellant, who had closed my file many months earlier, contacted my wife by phone and asked us "what was going on" because she had received money. After realizing that we were unaware of this, she said she wanted to send paperwork for me to sign (to get her back on my case). We advised her that I already had a representative and would not sign anything. That was the last time we heard from her.

R. at 102.

On April 27, 2015, the Board determined that the fee dispute matter did not constitute a simultaneously contested claim, and found that the payment of the attorney fees to Ms. Cornell was improper; it is this decision that is the basis for this appeal.

On August 21, 2015, Ms. Cornell filed an NOA with the Court. A month later, VA paid Mr. Moberly $20,204.16. The Court submitted the case to a panel and scheduled oral argument for September 28, 2016. On September 20, 2016, VA filed a *Solze* notice[4] informing the Court that it had failed to send a copy of the May 2012 RO decision to Mr. Moberly's representative, DAV, suggesting that the decision was not final. After oral argument, Ms. Cornell filed an opposed motion for leave to file supplemental briefing addressing the issues of when DAV received actual notice of the May 2012 RO decision as well as the scope of this decision.

## II. THE PARTIES' ARGUMENTS

Ms. Cornell asserts that she is entitled to the attorney fees because she represented Mr. Moberly on the underlying claim for service connection for bilateral hearing loss and tinnitus that formed the basis for his schedular TDIU award. Although she initially argued in her brief that the the Board and the Court were without jurisdiction to address the fee matter because the RO's May 2012 decision was a final decision, she conceded at oral argument that Mr. Moberly's NOD was timely received by VA, abating the finality of the May 2012 decision. Ms. Cornell, however, argues that on receipt of the timely filed NOD VA failed to provide to her a copy of the SOC and remand is warranted. *See Manlicon v. West*, 12 Vet.App. 238, 240-41 (1999) (requiring remand when an SOC is not issued in response to a timely filed NOD); *see also* 38 U.S.C. § 7105A(b) (requiring VA

---

[4] In *Solze v. Shinseki*, the Court held that parties to a case have "a duty to notify the Court of developments that could deprive the Court of jurisdiction or otherwise affect its decision." 26 Vet.App. 299, 301 (2013) (per curiam order).

to furnish an SOC to all parties in interest after an NOD is filed); 38 C.F.R. § 19.9(a) (2016) (providing for remand for a procedural error).

The Secretary asserts that Ms. Cornell did not reasonably raise the issue of TDIU when she represented Mr. Moberly on his initial claims for bilateral hearing loss and tinnitus, and therefore, she is not entitled to attorney fees. With regard to jurisdiction, the Secretary argues that the Board and the Court had jurisdiction over the fee eligibility because Mr. Moberly filed a timely NOD to the May 2012 RO decision, or, alternatively, that VA extended Mr. Moberly's time to file his NOD under 38 C.F.R. § 3.109(b) (2016) (allowing VA to extend the time to challenge an adverse decision for good cause shown).

Mr. Moberly, the intervenor, argues that Ms. Cornell is not entitled to the fee because she did nothing to earn the fee. Accordingly, any fee paid to her is per se unreasonable. He asks the Court to prohibit VA from seeking recoupment from him of the $20,204.16, contending that VA either waived the right when it issued payment to him on September 2015 in light of the erroneous payment to Ms. Cornell, or that VA assigned its rights of recoupment to Ms. Cornell as evidenced by its December 2012 letter.

After briefing and oral argument Ms. Cornell filed a motion for leave to file supplemental briefing. The briefs, citations to supplemental authorities, and the oral argument addressed the arguments relevant to this appeal and the Court requires no further briefing on the issues. Therefore, as a preliminary matter the Court will deny Ms. Cornell's motion for leave to file supplemental briefing.

### III. ANALYSIS

Although Ms. Cornell presents jurisdictional and procedural arguments in her efforts to overturn the Board's April 2015 decision, this case resolves around rather simple, undisputed facts. Because the issue of Ms. Cornell's entitlement to the attorney fees is the critical part of this appeal, the Court will address this issue first and then address Ms. Cornell's procedural and jurisdictional arguments.

A.  No Entitlement to a Second Attorney Fee Award

It is undisputed that Ms. Cornell successfully represented Mr. Moberly on his claim for bilateral hearing loss and tinnitus.  As a result of her representation, the Board awarded service connection for hearing loss and tinnitus and the RO then assigned Mr. Moberly an 80% disability compensation rating for hearing loss and a 10% disability rating for tinnitus effective January 2006. Based on the parties' November 2010 fee agreement, VA paid Ms. Cornell 20% of Mr. Moberly's past-due benefits, totaling $18,208.81 in attorney fees.  After receiving her fees, Ms. Cornell abandoned her client, informed him that there was nothing further she could do for him, and closed his file.

Even after terminating the attorney-client relationship, Ms. Cornell now argues that she is entitled to $20,204.16 in attorney fees, representing 20% of Mr. Moberly's past-due TDIU benefits. She asserts that VA assigned Mr. Moberly TDIU benefits based on the initial 80% disability rating for bilateral hearing loss – the matter she successfully represented Mr. Moberly on before this Court. *See* 38 C.F.R. § 4.16(a) (2016) (awarding TDIU when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities and there is one disability rated 60% or more than one disability with at least one of the disabilities rated 40% and sufficient disability to bring the combined rating to 70%).

In support of her argument, Ms. Cornell relies on *Mason v. Shinseki*, where an attorney was entitled to 20% of the past-due benefits awarded to the veteran because the benefits were based on the claim filed with VA based on underlying issues the attorney successfully appealed to the Court. 13 Vet.App. 79, 86 (1999) (*Mason I*).  In *Mason I*, the Court held that the attorney was entitled to 20% in attorney fees and that the attorney need not have represented the veteran before the Board or VA to secure the award of past-due benefits.  *Id*.  The Court further noted that if eligibility for a TDIU rating was reasonably raised by the evidence of record as part of the underlying claim for disability compensation before VA, then TDIU is part of the initial rating and the attorney would be entitled to 20% of such an award.  *Id*.

Although TDIU is not a separate claim for benefits but either part of an initial claim for benefits or part of an increased-rating claim, TDIU must be expressly raised by the veteran or reasonably raised by the record.  *See Rice v. Shinseki*, 22 Vet.App. 447, 453 (2009).  Ms. Cornell did not raise the issue of TDIU as part of Mr. Moberly's claim for bilateral hearing loss and tinnitus,

6

nor was the issue raised by the record. After successfully obtaining a remand from the Court, which did not mention TDIU or Mr. Moberly's unemployability, Ms. Cornell presented a written brief to the Board arguing for service connection for Mr. Moberly's bilateral hearing loss and tinnitus; however, she presented no argument for TDIU in her brief nor did she submit to the Board evidence of Mr. Moberly's unemployability based on his hearing loss or tinnitus. R. at 340-50. The record reflects that the August 2011 RO decision implementing the Board's decision awarding service connection for bilateral hearing loss and tinnitus noted that the "vet[eran] meets schedular requirements for I[ndividual] U[nemployability], but there is no evidence showing he is unable to work due to these disabilities." R. at 314. DAV – not Ms. Cornell – filed Mr. Moberly's TDIU claim and submitted medical evidence of his unemployability due to hearing loss; DAV submitted this evidence 6 months after Mr. Moberly received his initial rating for bilateral hearing loss and tinnitus. In *Jackson v. Shinseki*, the Federal Circuit denied attorney fees arising from a veteran's TDIU award because the attorney presented no evidence of the veteran's unemployability before the Board issued a decision. 587 F.3d 1109, 1109-11 (Fed. Cir. 2009).

Ms. Cornell presents no additional argument that she *contributed* to Mr. Moberly's award for TDIU. *See Scates v. Nicholson,* 282 F.3d 1362, 1366 (Fed. Cir. 2002) (holding that an attorney "may receive a fee that fairly and accurately reflects his *contribution* to and responsibility for the benefits awarded") (emphasis added). In fact, Ms. Cornell admits that she closed Mr. Moberly's case prematurely and overlooked the possibility of individual unemployability benefits. *See* Appellant's Reply Brief (Br.) at 6. Accordingly, Ms. Cornell has not demonstrated clear error in the Board's finding that she is not entitled to attorney fees. *Scates*, 282 F.3d at 1368 (recognizing that there are factual issues to be resolved in deciding an attorney's claim for fees); *Butts v. Brown*, 5 Vet.App. 532, 534 (1993) (en banc) (holding that the Court reviews factual findings under the "clearly erroneous" standard of review); *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

Having determined that Ms. Cornell is not entitled to attorney fees, the Court will address her jurisdictional and procedural attempts to set aside the Board's April 2015 decision.

B.  Subject Matter Jurisdiction

The Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress, and its jurisdiction is limited to review of Board decisions.  38 U.S.C. §§ 7252(a) and 7266.  The Board reviews adverse RO decisions affecting the provision of VA benefits and renders the final decision for the Secretary on all questions of law and fact.  38 U.S.C. § 511(a).  "The Board is unable to act on a matter absent an appealable, binding RO decision," and in order for the RO decision to be effective proper notice is required.  *Sellers v. Shinseki*, 25 Vet.App. 265, 274 (2012); *see also* 38 U.S.C. § 5104(a) (requiring the Secretary to provide notice of decisions affecting the provision of benefits under section 511).  If the Board lacks subject matter jurisdiction, then so does the Court. *Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) (holding that the Court's "jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed"); *Yi v. Principi*, 15 Vet.App. 265, 267 (2001) ("The Court lacks appellate jurisdiction over any issue that cannot be the subject of a Board decision.").  The Court could not have addressed the merits of this appeal without having jurisdiction to do so. The appellant raised jurisdictional concerns in an effort to obfuscate the problem she had by accepting payment for work that she did not do.  *See Posey v. Shinseki*, 23 Vet.App. 406, 407 (2010) (holding that the Court "has an independent duty to determine its own jurisdiction").

Ms. Cornell argues that 38 U.S.C. § 5904(d) does not require VA to make a fee eligibility determination.  Instead, she contends that VA must withhold and pay attorney fees when the statutory and regulatory requirements are met, and the Board's review is limited to ensuring compliance with the statutory and regulatory requirements.  *See* 38 U.S.C. § 5904(d); 38 C.F.R. § 14.636(h) (2016).  Therefore, Ms. Cornell asserts that the Board was without subject matter jurisdiction to address the fee eligibility issue.  Oral Argument (Arg.) 13:25-14:45 *Cornell v. McDonald*, U.S. Vet.App., No. 15-3191 (argued Sept. 28, 2016).

Congress provided a statute for the direct payment of fees to attorneys representing veterans. To receive direct payment of attorney fees from a veteran's past-due benefits, the parties' fee agreement must reflect that (1) the total fee payable may not exceed 20% of past-due benefits awarded on the basis of the claim, (2) the Secretary pays the attorney directly from the any past-due benefits awarded on the basis of the claim, and (3) payment is contingent on a resolution favorable to the claimant.  38 U.S.C. § 5904(d)(1), (2); 38 C.F.R. § 14.636(h) (2016).  The U.S. Court of

Appeals for the Federal Circuit (Federal Circuit) provided specific guidance with respect to determining entitlement to attorney fees where a client terminates an attorney's representation. *Scates*, 282 F.3d at 1366.[5]  In *Scates*, the Federal Circuit held that an attorney who has been discharged during the case "is entitled only to a fee reflecting his [or her] contribution to the litigation." *Id*.  The Federal Circuit noted that the line between "entitlement to attorney fees" and "reasonableness and excessiveness of attorney fees" is not necessarily clear and bright.  *Id*. Recently, this Court held that in reviewing fees for reasonableness, the Secretary may consider not only the regulatory factors set out in 38 C.F.R. § 14.636(e), but also "other factors pertinent to the specific circumstances of the case." *Bly v. McDonald*, 28 Vet.App. 256, 264 (2016).  In addition to statutory law and interpretative caselaw, the model rules of professional conduct provide general guidance in determining when an attorney fee is reasonable, considering such factors as the time required to represent the client, the difficulty of the legal questions, and the legal skill required to perform the legal service properly.  *See, e.g.*, MODEL RULES OF PROF'L CONDUCT r. 1.5 (AM. BAR ASS'N 2015) ("A lawyer shall not . . . collect an unreasonable fee . . . . "); ILL. RULES OF PROF'L CONDUCT 2010 ("A lawyer shall not . . . collect an unreasonable fee . . . .").[6]

After Ms. Cornell filed an NOD to the February 2013 decision, the Board reviewed de novo the RO's eligibility finding and issued its decision in April 2015.  *See* 38 U.S.C. § 7104 (entitling an appellant to "one review on appeal to the Secretary"); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317,1319 (Fed. Cir. 2005) ("[T]he Board conducts de novo review of [RO] proceedings based on the record.").  By February 2013, Ms. Cornell had physical possession of the money and the issue was not only eligibility to receive the fees but also reasonableness in retaining the fees paid to her.  *See Scates*, 282 F.3d 1366 (recognizing the less than bright line between entitlement to fee and reasonable of fee). The Board found that Ms. Cornell's claim to the fees arising from Mr. Moberly's past-due TDIU benefits award "is unconscionable and amounts to a windfall she neither earned nor was entitled [to]." R. at 11.  Because an attorney may receive "only a fee that fairly and accurately reflects his [or her] contribution to and responsibility for the benefits

---

[5] In this case, the attorney-client relationship was terminated by Ms. Cornell rather than by the veteran Mr. Moberly; however, this fact does not change the logic or render the Federal Circuit's decision inapplicable.

[6] Ms. Cornell signed both fee agreements as an attorney practicing in Illinois.  *See* R. at 294, 418 (Nov. 2010 and Sept. 2011 fee agreements listing association with firms in Oak Park, Illinois, and Des Plaines, Illinois).

awarded," contrary to Ms. Cornell's assertions, the Board may consider not only the statutory and regulatory requirements of section 5904(d) and §14.636(e) and (h) with respect to eligibility for and reasonableness of fees, but the Board may also consider other factors pertinent to the specific circumstances of the case. *See Bly*, *supra*; *Scates*, 282 F.3d at 1366-67. Here, the Board reviewed the RO's fee eligibility decision, considering the statutory and regulatory law in addition to the fact that Ms. Cornell terminated the attorney-client relationship with Mr. Moberly and failed to recognize his potential claim for TDIU benefits. The Board concluded that Ms. Cornell did nothing to earn the $20,204.16 in attorney fees that VA erroneously paid her. Because the Board issued a final decision as to Ms. Cornell's entitlement to the $20,204.16 attorney fee, the Court has jurisdiction over this appeal. *Ledford, supra*.

C. Simultaneously Contested Claim

Despite the Board's finding that this case does not involve a simultaneously contested claim, the Secretary concedes that the attorney fee dispute involves such a claim. *See* Secretary's Br. at 8-9 (conceding that the Board erred in characterizing the case as not involving a simultaneously contested claim). The Court agrees. In *Mason v. Shinseki*, the Federal Circuit deferred to the Secretary's interpretation of his regulation 38 C.F.R. § 20.3(p) defining "simultaneously contested claims [to] include the situation in which 'the allowance of one claim results in the payment of a lesser benefit to another claimant.'" 743 F.3d 1370, 1376 (Fed. Cir. 2014) (*Mason II*). The Federal Circuit concluded that the

> [d]irect payment of attorney fees under § 5904(d) results in lesser payment to veterans based on the award of past due benefits[;] [a]nd direct-fee requests concern contested claims: one by an attorney and one by a veteran, both directed at recovery of a portion of a payment of funds on an award of past-due benefits.

*Id.*

Here, the parties' attorney fee dispute arose after VA erroneously paid $20,204.16 to Ms. Cornell based on a direct fee pay agreement under section 5904(d). R. at 416-18. At the time, VA's payment of $20,204.16 resulted in payment of a lesser amount in benefits to Mr. Moberly.[7] *See Scates*, 282 F.3d at 1369 (Fed. Cir. 2002) ("[S]ince the [VA's] payments to [the attorney] will be

---

[7] After the Board decision, the Secretary paid Mr. Moberly $20,204.16 but that does not affect our analysis of whether the Board's finding was clearly erroneous because our analysis is based on the record at the time of the Board's decision. 38 U.S.C. §§ 7104(a) (stating that the Board decision is based on the evidence in the record), 7252(b) ("Review in the Court shall be on the record of proceedings before the Secretary and the Board.").

made from the twenty percent of [the veteran's] accrued benefits that [VA] withheld . . . . [i]f less than twenty percent is paid to [the attorney], presumably the balance will be paid to [the veteran]."). Because the Court finds that *Mason II* controls the attorney fee dispute in this case, the Court will set aside the Board's clearly erroneous finding that this case did not involve a simultaneously contested claim. 38 U.S.C. § 7261(a)(4) (directing the Court to set aside material adverse findings if they are clearly erroneous); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U .S. Gypsum Co.*, 333 U.S. 364, 395 (1948))).

As this case involves a simultaneously contested claim, Ms. Cornell initially argued that Mr. Moberly did not file a timely NOD, and therefore, the RO's May 2012 decision that she was entitled to benefits was a final decision. *See* 38 U.S.C. § 7105A(a) (requiring that an NOD in a simultaneously contested claim be filed within 60 days from the notice of an adverse decision). In light of VA's *Solze* notice, however, Ms. Cornell conceded at oral argument that Mr. Moberly had filed a timely NOD to the May 2012 RO decision because VA failed to provide Mr. Moberly's representative DAV with a copy of the decision. 38 U.S.C. § 5104(a) (requiring VA to provide notice to the claimant and his or her representative of decisions affecting benefits); *Cox v. West*, 149 F.3d 1360, 1365 (Fed. Cir. 1998) (holding that 38 U.S.C. § 5904(d)(2)(A), which provides for payment of attorney fees out of past-due benefits owed to a veteran, was a law that affects the provision of benefits); *Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (holding that "where VA has failed to procedurally comply with statutory mandated requirements, a claim does not become final for purposes of appeal to the Court" and thus "there is no final board decision before us for review").

Mr. Cornell also acknowledged that as of July 31, 2012, DAV filed a timely NOD for Mr. Moberly; DAV's filing demonstrated that it had actual knowledge of the May 2012 decision and that DAV's actual knowledge cured the statutory notice error. Oral Arg. at 4:44 -5:25 *Cornell v. McDonald*, U.S. Vet. App No. 15-3191 (argued Sept. 28, 2016) (Ms. Cornell's counsel conceding that in light of the *Solze* filing, Mr. Moberly's NOD is timely); Citation to Supplemental Authority by the Appellant (Sept. 26, 2016) (noting that the July 31, 2012, NOD was timely received by VA); *see also Sellers*, 25 Vet.App. at 277 ("[O]ur caselaw makes clear that defects of decisional notice are cured when the record demonstrates that the claimant and his representative *actually* received

11

notice of the decision."). Further, the record on appeal supports a finding that Mr. Moberly filed a timely NOD because DAV possessed actual knowledge as of July 31, 2012, and DAV filed Mr. Moberly's NOD the same day. *Vogan v. Shinseki*, 24 Vet.App. 159, 164 (2010) (holding that, "in assessing the prejudicial effect of any error of law or fact, the Court is not confined to the findings of the Board but may examine the entire record before the Agency, which includes the record of proceedings").

## D. Remand Unwarranted

Although Ms. Cornell conceded that Mr. Moberly filed a timely NOD to the May 2012 RO decision, she argues that remand is nevertheless warranted because she did not receive an SOC as required by the simultaneously-contested-claims statute. 38 U.S.C. § 7105A(b). She contends that VA did not send her an SOC in response to Mr. Moberly's July 2012 NOD and a remand is required for the RO to issue an SOC. *Manlincon v. West*, 12 Vet.App. 238, 240-41 (1999) (holding that the Board erred in not remanding a claim to the RO for issuance of an SOC where it had not been properly furnished); *Holland v. Gober*, 10 Vet.App. 433, 436 (1997) (per curiam order) (vacating Board decision and remanding matter when VA failed to issue SOC after claimant submitted timely NOD).

Assuming arguendo that the Board erred by failing to provide Ms. Cornell with an SOC in response to Mr. Moberly's July 2012 NOD, Ms. Cornell fails to demonstrate that she suffered any prejudice. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the appellant bears burden of demonstrating prejudicial error on appeal). The record reflects that after reviewing Mr. Moberly's July 2012 NOD, the RO concluded that Ms. Cornell was not entitled to attorney fees, and issued a new decision in February 2013. When the RO received Ms. Cornell's NOD to the new February 2013 decision, the RO joined the appeals and issued an SOC in September 2014. *See* R. at 168 (September 2014 SOC listing Mr. Moberly's July 2012 NOD and Ms. Cornell's January and February 2013 NODs).

Here, there is one set of facts and one issue on appeal: Whether Ms. Cornell is entitled to attorney fees of $20,204.16 paid to her as a result of Mr. Moberly's past-due TDIU benefits award. Ms. Cornell characterizes the issue as whether VA had the authority to demand that she "settle up" with Mr. Moberly; however, the issue lurking beneath VA's demand for settlement is whether Ms. Cornell is entitled to the $20,204.16 in attorney fees. During the adjudication of fee entitlement and

12

the associated NODs, Ms. Cornell presented detailed arguments supporting her disagreements with VA's determinations. R. at 222-26 (Jan. 8, 2013, NOD filed by Ms. Cornell to VA's December 8, 2012, letter); *id.* at 201-10 (Feb. 18, 2013, NOD filed by Ms. Cornell to the RO's Feb. 8, 2013, decision).

At each stage of the process, Ms. Cornell had an opportunity to be heard and to participate in the proceedings. *See Haney v. Nicholson*, 20 Vet.App. 301, 305 (2006) (noting that the Secretary "is required to provide fair process in the adjudication of claims" (citing *Austin v. Brown*, 6 Vet.App. 547 (1994))); *Thurber v. Brown*, 5 Vet.App. 119, 122-26 (1993) (noting general principles of fair process and stating that "VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process"). In fact, Ms. Cornell has not alleged that she did not have an opportunity to be heard and to participate in the adjudication or appellate process. Indeed, the record on appeal shows that she received an SOC in September 2014 and participated fully in the appellate process. Accordingly, Ms. Cornell has not demonstrated prejudice from any purported procedural errors. 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki* , 556 U.S. at 409 (holding that the Federal Circuit's ruling that all statutory notice errors are presumptively prejudicial was inconsistent with this Court's statutory requirement to take due account of the rule of prejudicial error"); *Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004) ("[T]here is no implicit exemption for the notice requirements of [the VCAA] from the general statutory command in section 7261(b)(2) that [this Court] shall 'take due account of the rule of prejudicial error.'"); *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (holding that remand is unnecessary "[i]n the absence of demonstrated prejudice").

### E. Equitable Defense of Laches

At oral argument, Ms. Cornell invoked the equitable defense of laches against the Secretary for his delay in seeking recoupment of the attorney fees. VA issued its initial decision awarding Ms. Cornell attorney fees in May 2012 and notified her in December 2012 that the payment was erroneous. *See* R. at 247 (May 2012 decision withholding $20,204.16 as possible attorney fees); *id.* at 228 (Dec. 2012 notice letter from VA that the payment of $20,204.16 was in error). Ms. Cornell fails to demonstrate that laches applies in situations such as this where the Secretary acted to correct his error within a year. *See McQuiddy v. Ware*, 87 U.S. 14, 20 (1874) ("Equity always refuses to

interfere where there has been *gross* laches in the prosecution of rights." (emphasis added)); *Advanced Cardiovascular Sys. v. SciMed Life Sys.*, 988 F.3d 1157, 1161 (Fed. Cir. 1993) ("[L]aches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the [other party] as a result of the delay."); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) ("The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances."). Even assuming that laches may be invoked against the Government in these circumstances, Ms. Cornell does not come into the Court with clean hands which prevents the invocation of an equitable defense. *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 846 (Fed. Cir. 1992) ("Any party seeking equitable relief must come to the court with 'clean hands.'"). The record contains unrefuted evidence that on receiving the second attorney fee payment, Ms. Cornell contacted Mr. Moberly, expressed confusion as to the recent payment – an indication that Ms. Cornell either knew or suspected that the payment was improper – and then attempted to get back on his case. *See* R. at 102 (noting that Mr. Moberly's recollection that Ms. Cornell called and asked "what was going on" after receiving the second attorney fee). Based on this evidence of record, the Court finds that Ms. Cornell had unclean hands and is precluded from asserting the equitable defense of laches.

### F. Recoupment of Attorney Fees

In light of the above, the Court will affirm the Board's conclusion that VA's payment of $20,204.16 in attorney fees to Ms. Cornell was improper. Based on this holding and as ruled on from the bench at oral argument, VA may not recoup payment of the fees from Mr. Moberly. 38 U.S.C. § 5314 (authorizing the Secretary to recoup overpayments made to a benefits recipient by offsetting future payments). The Secretary, however, may take all appropriate steps to recover the indebtedness from Ms. Cornell. 38 U.S.C. § 5316 (authorizing the Secretary to sue to collect certain debts).

### IV. CONCLUSION

On consideration of the foregoing, the Court SETS ASIDE the Board's erroneous finding that this case does not involve a simultaneously contested claim, and AFFIRMS the conclusion of the Board in its April 27, 2015, decision that Ms. Cornell is not entitled to attorney fees from Mr. Moberly's award of past-due TDIU benefits.