[J-4-2020] [MO: Todd, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| NICOLE B., INDIVIDUALLY AND ON BEHALF OF N.B., | : | No. 16 EAP 2019 |
| | : | |
| | : | Appeal from the Order of |
| Appellant | : | Commonwealth Court dated |
| | : | December 17, 2018 at 868 C.D. |
| | : | 2018 affirming the Judgment entered |
| v. | : | on October 4, 2017 in the Court of |
| | : | Common Pleas, Philadelphia |
| | : | County, Civil Division at 3745 April |
| SCHOOL DISTRICT OF PHILADELPHIA, | : | Term 2014. |
| JASON JOHNSON AND JALA PEARSON, | : | |
| | : | ARGUED: March 10, 2020 |
| Appellees | : | |

**DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED: September 16, 2020**

The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-63, requires that "[a]ny complaint" alleging discrimination covered by its terms must be filed with the Pennsylvania Human Relations Commission ("PHRC") "within one hundred eighty days after the alleged act." *Id.* § 959(h). By invoking that complaint procedure, a complainant preserves his or her right subsequently "to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by" the PHRA. *Id.* § 962(c)(1). Although the failure to timely file a complaint with the PHRC ordinarily would preclude a complainant from subsequently pursuing litigation in the courts of common pleas, *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918-20 (Pa. 1989), those time limits are "subject to waiver, estoppel and equitable tolling," 43 P.S. § 962(e). Today's Majority concludes that the PHRA's equitable tolling provision subsumes the age of minority, such that a person alleging discrimination as a child need

not file a complaint within the law's 180-day time limits. Because I do not share the Majority's view that traditional equitable tolling principles inherently encompass tolling during the period of minority, I respectfully dissent.

Preliminarily, it appears that Nicole B. ("Mother") waived the issue of equitable tolling by not adequately preserving it in the trial court. In her response to the Philadelphia School District's ("the District") summary judgment motion, Mother briefly mentioned equitable tolling in a discussion focused upon the interplay between the PHRA and the Minority Tolling Statute ("MTS"), 42 Pa.C.S. § 5533. *See* Plaintiff's Response in Opposition to Defendant School District of Philadelphia's Motion for Summary Judgment, 5/4/2017, at ¶103 ("Defendant has raised and this Court has rejected the argument that the minority tolling provision does not apply to Plaintiff's PHRA claims on five previous occasions. The PHRA does specifically provide for equitable tolling."); Memorandum of Law in Support of Plaintiff's Response to Defendant School District's Motion for Summary Judgment at 27 ("The Act also specifically provides for equitable tolling. *See* 43 Pa.[C.S.] § 962(e). A narrow interpretation of this equitable provision that precludes minority tolling would contravene the Act's directive to liberally construe its provisions to achieve its goal of eliminating discrimination.").

Mother then included the following conclusory statement in her motion to remove nonsuit following a trial on her son's claims: "The Court erred in holding that the equitable tolling exceptions contained in the [PHRA] do[] not encompass Pennsylvania's minority tolling provision. Plaintiff preserved this issue by filing a response to Defendant's Motion for Nonsuit." Plaintiff's Motion for Post Trial Relief Pursuant to Pa.R.C.P. 227.1 to Remove Nonsuit for Defendants and/or Grant a New Trial, 8/17/2017, at ¶6. However, Mother's response to the District's motion for nonsuit failed even to mention equitable tolling. Nor does it appear anywhere in the memorandum of law attached to her motion

to remove nonsuit, which is a near reproduction of the memorandum that she filed in opposition to summary judgment, save for the excised portion invoking the PHRA's equitable tolling provision. Although the Majority rejects the invocation of the waiver doctrine here because the District failed to raise it before the Commonwealth Court, Maj. Op. at 10 n.4, I do not consider Mother's cursory manner of advocacy sufficient to save for appellate review a weighty issue that she did not expressly assert in her motion to remove nonsuit.

Notwithstanding these waiver concerns, I strongly disagree that subsection 962(e)'s equity exception subsumes considerations of minority. Equitable tolling is "a long-established feature of American jurisprudence derived from 'the old chancery rule.'" *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10-11 (2014) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see, e.g.*, *Young v. United States*, 535 U.S. 43, 53 (2002) ("[T]olling is inappropriate when a claimant has voluntarily chosen not to protect his rights within the limitations period."); *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *McQuiddy v. Ware*, 87 U.S. (20 Wall.) 14, 19 (1873) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights.").

In discussing the doctrine, the United States Supreme Court has cautioned that such relief should be extended "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). To that end, the High Court has noted that the doctrine appropriately is invoked where a plaintiff has been "injured by . . . fraud [and] remains in ignorance of it without any fault or want of diligence or care on his part." *Bailey v. Glover*, 88 U.S. (21

Wall.) 342, 348 (1874). Equitable tolling also has been "allowed . . . in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," *e.g.*, filing an otherwise timely complaint in the wrong forum. *Irwin*, 498 U.S. at 96. And although the High Court has commented that tolling may be available where "some extraordinary circumstance prevents [a plaintiff] from bringing a timely action," *Lozano*, 572 U.S. at 10, there is a dearth of authority regarding the kinds of events that would satisfy this amorphous condition, *see McQuiddy*, 87 U.S. at 19 ("There is no artificial rule on such a subject, but each case as it arises must be determined by its own particular circumstances.").

Here, Mother asserts that her son's status as a minor, without more, should suffice to toll the limitations period for the PHRA complaint she belatedly filed on his behalf. However, she cites no authority from this jurisdiction or any other for the proposition that the period of minority constitutes an "extraordinary" circumstance, which I take to mean some event that rises to the level of a *force majeure*, *i.e.*, something effectively beyond a diligent party's control. The Majority notes two decisions from state courts of last resort permitting equitable tolling upon consideration of minority, neither of which provides much support for Mother's position. *See* Maj. Op. at 16-17 (citing *Lafage v. Jani*, 766 A.2d 1066, 1073 (N.J. 2001); *Wimberly v. Gatch*, 635 So.2d 206, 217 (La. 1994)). In *Wimberly*, the Supreme Court of Louisiana invoked the doctrine of *contra non valentem*, which includes that State's discovery rule, to suspend the prescription period for a cause of action arising from sexual abuse of a minor whose parents had no knowledge of, and could not reasonably discover, the abuse within the limitations period. *Wimberly*, 635 So.2d at 216. Because an "unemancipated minor does not have the procedural capacity to sue . . . under Louisiana's legal framework," that child's parents could not bring suit on his behalf until they discovered his injury, which was well after the prescription period had

lapsed. *Id.* Here, by contrast, Mother admits that she discovered her son's injury well within the limitations period for filing an administrative complaint with the PHRC, but inexplicably waited more than two years before taking action. *See Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) ("Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute.").[1]

The Supreme Court of New Jersey's decision to apply minority tolling to the State's Wrongful Death Act in *Lafage* is particularly inapposite given the considerations unique to that State that were central to the Court's decision, namely its historical "distinction between a procedural statute of limitations and a substantive one." *Lafage*, 766 A.2d at 1070. Pertinently, New Jersey courts traditionally viewed statutes of limitations as procedural if they "govern[ed] general causes of action, such as tort or contract actions, that were recognized under the common law." *Id.* at 1071; *see id.* ("The running of a procedural statute of limitations bars only the remedy, not the right that existed at common law."). The *Lafage* Court began by looking to an early 17th century English statute that, "among other things, allowed tolling of accrual of a cause of action for personal injuries until a person was twenty-one years of age," *id.* at 1072, and that subsequently "'was declared in force in the province of New Jersey in 1728 and re-enacted by the State Legislature in 1799.'" *Id.* (quoting *O'Connor v. Altus*, 335 A.2d 545, 558 (N.J. 1975)). The Court then observed that "[t]he New Jersey Constitution of 1776 provided that 'the common law of England, as well as so much of the statute law, as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature." *Id.* (quoting N.J. CONST. of 1776, art. XXII). Because minority

---

[1] In *Fine*, this Court considered whether a statute of limitations could be equitably tolled under the discovery rule and the doctrine of fraudulent concealment. *See Fine*, 870 A.2d at 858-61. Mother does not argue that her son's PHRA claim should be tolled for either of these reasons.

tolling for personal injuries predated the promulgation of New Jersey's Wrongful Death Act of 1848 by more than fifty years, the Court concluded that the Legislature "reasonably could have believed that it would be superfluous to include a separate infancy tolling provision within the" Act itself. *Id.*

The *Lafage* Court then identified a second, independent reason why minority tolling should apply to the particular statute at issue in that case: unlike the common law of England, "wrongful death claims were cognizable at common law" in New Jersey. *Id.* at 1076. The Court explained:

> Four years after the adoption of New Jersey's Constitution of 1844, New Jersey adopted its first Wrongful Death Act in 1848. The Act was modeled after Lord Campbell's Act of 1846. That fact is highly significant because the common law of England has a constitutional basis in our State. "New Jersey's Constitution of 1776 provided that the common law of England (as well as so much of the statute law) as was practiced in the colony should remain in force until altered by the Legislature (Art. XXII) and the Constitution of 1844 provided that the common law (and statute laws) shall remain in force until they expired by their own limitation or were altered by the Legislature (Art. X, par. 1)." *Collopy v. Newark Eye & Ear Infirmary*, 141 A.2d 276 (N.J. 1958); *State v. One 1990 Honda Accord*, 712 A.2d 1148 (N.J. 1998); *State v. Smith*, 426 A.2d 38 (N.J. 1981). In England, no common law cause of action for wrongful death existed. *Baker v. Bolton*, 170 Eng. Rep. 1033 (Nisi Prius 1808). . . .
>
> Lord Campbell's Act of 1846 created a statutory action for wrongful death. The preamble to Lord Campbell's Act of 1846 was a parliamentary declaration of what the English common-law rule was at that time. That Act created a civil cause of action for deaths that had been caused under circumstances that would amount to a felony under the criminal laws.
>
> Our Act of 1848, however, did not include the preamble contained in Lord Campbell's Act declaring that no cause of action existed at common law for wrongful death. In addition, when our Act became law in 1848, the only reported cases in American law were those that allowed for the recovery of damages for the death of another. . . .

> Legal historians have concluded that the sole substantial reason why the English common law rule disallowed a wrongful death cause of action was the felony-merger doctrine. Under the felony-merger doctrine, no civil recovery was permitted under the common law for an act that constituted both a tort and a felony. The felony was against the Crown and was deemed more serious than the tort, and thus the tort was merged into, or pre-empted by, the felony. . . . Viewed in its historical context, it becomes apparent that when our Legislature adopted our Wrongful Death Act, its failure to include the preamble to Lord Campbell's Act means that our Legislature intentionally altered the English common law announced in *Baker* at the time it enacted our Wrongful Death Act in 1848. Stated differently, our Act of 1848 left in place the pre-*Baker* English common law that had been adopted at the time of our Constitution of 1776.

*Id.* at 1076-77 (cleaned up). "The practical effect of recognizing" that New Jersey's Wrongful Death Act was a codification of the State's common law, in the Court's view, was "that it provide[d] an independent basis on which to allow equitable tolling" of the Act's limitations period. *Id.* at 1077. In short, because the Act's statute of limitations was demonstrably "procedural," the Court deemed it "indisputably . . . subject to equitable principles" that predated New Jersey's statehood by more than half-a-century—*e.g.*, minority tolling. *Id.*

Pennsylvania, conversely, has never recognized the age of minority as an equitable consideration *per se*. In fact, more than two centuries ago, this Court held that statutes of limitations "bind[] every member of the community," including minors, unless the General Assembly expressly provides otherwise. *Mobley v. Oeker*, 3 Yeates 200, 202 (Pa. 1801). As the Commonwealth Court accurately explained, Pennsylvania courts consistently have rejected the interchangeability of equitable and minority tolling. *Nicole B. v. Phila. Sch. Dist.*, 868 CD 2018, 2018 WL 6596377, at *5-6 (Pa. Cmwlth. Dec. 17, 2018). For instance, in *DeSantis v. Yaw*, 434 A.2d 1273 (Pa. Super. 1981), a minor plaintiff filed an action in trespass and sought to toll the two-year limitations period under equitable principles. Although the Superior Court expressed concern that a minor might

lose his ability to bring a cause of action due to his parents' failure to timely file a suit, it found no authority for waiving the statute of limitations based solely upon the plaintiff's status as a minor absent specific statutory language imposing that right. The court concluded that the minor's claims were linked with those of his parents, and thus were time-barred. *Id.* at 1275-77; *see also Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997) (rejecting claim that plaintiff's repressed memory from childhood injury sufficed to equitably toll the statute of limitations period for a battery action pursuant to the discovery rule); *Redenz by Redenz v. Rosenberg*, 520 A.2d 883 (Pa. Super. 1987) (holding that minority was not a basis for applying equitable tolling to a negligence claim, which had accrued before the effective date of the MTS).

Our General Assembly is presumed to know that exceptions to limitations periods for minors apply only if it expressly provides for such exceptions. By enacting the MTS, the Legislature explicitly limited minority tolling to certain time periods (those in subchapter B of chapter 55 of the Judicial Code) governing the filing periods of certain acts (civil actions initiated in a court of law). *See* 42 Pa.C.S. § 5533(a). In a sense, the MTS occupies the field of most civil actions governed by the Judicial Code. For those statutes whose limitations periods for civil actions are not covered by subchapter B, however, the General Assembly made a considered choice to include or exclude minority tolling. Examples of statutes expressly incorporating minority tolling include the Medical Care Availability and Reduction of Error Act ("MCARE") statute of repose, 40 P.S. § 1303.513(c); the Fraud and Abuse Control Act, 62 P.S. § 1409(b)(4)(iii)(D); and the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1721(b). But the PHRA was not similarly treated. Accordingly, the General Assembly plainly signaled its intention not to expand minority tolling beyond its carefully prescribed confines.

Having conspicuously excluded from the PHRA an explicit exception for minors, the Legislature presumably understood, and therefore intended, that a litigant's age would not toll that statute's limitations period. Yet the Majority treats the absence of minority tolling from the PHRA as a factor favoring Mother's expansive formulation of the equitable tolling doctrine, thus elevating an ordinary fact of life such as age to the level of an "extraordinary" condition. If equity now encompasses minority, as the Majority's holding logically would suggest, what role is left for the MTS? It appears to be superfluous. This Court should have encouraged Mother to harness the sympathetic circumstances of her son's case to persuade the General Assembly to fix the PHRA's apparent shortcomings via amendment in adherence with the clear terms of the PHRA. Instead, the Majority merely bypassed the legislative process to shoehorn Mother's policy views into the statute's formerly narrow equitable exceptions to filing an administrative complaint.

Such a construction also is contrary to how courts have interpreted the statute of limitations provision governing the Equal Employment Opportunity Commission ("EEOC"), the PHRC's federal counterpart. *See* 42 U.S.C. § 2000e-5(e). Like the PHRA's complaint mechanism, the EEOC's 180-day time limit for filing a charge under Title VII of the Civil Rights Act of 1964 is "subject to waiver, estoppel, and equitable tolling." *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 27 (1989) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). But no federal court has held that minority tolling belongs within the traditional considerations of equity in these circumstances. Of course, while the federal courts' interpretation of federal law does not bind this Court's assessment of a Pennsylvania statute, those decisions certainly are instructive in the analysis of textually and structurally analogous federal provisions that served as the model for the statute under review. *See Chmill v. City of Pittsburgh*, 412 A.2d 860, 871 (Pa. 1980) ("[T]he Human Relations Act should be construed in light of 'principles of fair employment law

which have emerged relative to the federal (statute).") (cleaned up).  The Majority simply overlooks that glaring inconsistency.

Though "we must be cognizant of the consequences of a particular interpretation," *Pa. Human Relations Comm'n v. Chester Sch. Dist.*, 233 A.2d 290, 298 (Pa. 1967), it is difficult to see how the PHRA's goal of addressing discriminatory practices principally through conciliation would be better served if those alleging unlawful practices could hold their claims in abeyance for upwards of eighteen years (plus 180 days) before initiating the complaint process.  But the Majority's holding ensures that result.  Construing the PHRA to permit protracted tolling inevitably will impair the Commission's ability to conduct effective investigations into allegations of discrimination.  The PHRA's time constraints are no doubt stingy, but no less so than the federal analogue.  This is an issue best left to the General Assembly to address, as it has done in other contexts when presented with compelling evidence that existing time constraints for filings had the practical effect of excluding meritorious claims.  *See, e.g.*, Act of Oct. 24, 2018, P.L. 894, No. 146 (codified at 42 Pa.C.S. § 9545(b)(2)) (extending the time limits for filing facially untimely PCRA petitions invoking a time-bar exception from sixty days to one year).  The Majority's approach today certainly may be creative, but "creativity cannot replace common sense." *Dalrymple*, 701 A.2d at 170.  For these reasons, I respectfully dissent.

Chief Justice Saylor and Justice Donohue join the dissenting opinion.