RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ARDELLA PATTERSON,

                *Plaintiff-Appellee,*

    *v.*

CHRYSLER GROUP, LLC, nka FCA US LLC;
CHRYSLER LLC UAW PENSION PLAN, nka FCA US
LLC-UAW Pension Plan,

                *Defendants-Appellants.*

No. 16-1365

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-10563—Arthur J. Tarnow, District Judge.

Argued: October 18, 2016

Decided and Filed: January 11, 2017

Before: BOGGS, SUHRHEINRICH, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** William E. Altman, THE MURRAY LAW GROUP, P.C., Bingham Farms, Michigan, for Appellants. Jack M. Schultz, JACK M. SCHULTZ, P.C., Bingham Farms, Michigan, for Appellee. **ON BRIEF:** William E. Altman, THE MURRAY LAW GROUP, P.C., Bingham Farms, Michigan, for Appellants. Jack M. Schultz, JACK M. SCHULTZ, P.C., Bingham Farms, Michigan, for Appellee.

1

––––––––––––––––––

**OPINION**

––––––––––––––––––

SUHRHEINRICH, Circuit Judge.

In this ERISA action brought pursuant to 29 U.S.C. § 1132,[1] Defendants-Appellants, Chrysler Group, LLC, et al. (Defendants), appeal the judgment of the district court ordering them to pay Plaintiff-Appellee, Ardella Patterson (Plaintiff), pension and surviving spousal benefits. We reverse, finding Plaintiff's claim barred by the statute of limitations.

**I.  BACKGROUND**

Plaintiff and Henry Lee Patterson wed on February 15, 1987.  They divorced on September 27, 1993.  The Judgment of Divorce declared that Plaintiff was entitled to one-half of the pension benefits Henry had accrued during his marriage to Plaintiff, with full rights of survivorship, and that these benefits were due to Plaintiff when they became payable to Henry. It further stated that Henry was forbidden from choosing a pension payment option that would deprive Plaintiff of these benefits.[2]  Henry worked for the Chrysler Corporation for 334 months, from June 3, 1965 to January 29, 1992, and began receiving retirement benefits under the Chrysler – UAW Pension Plan (the Plan)[3] on April 1, 1994, in the form of a "Lifetime Annuity Without Surviving Spouse" option.  Thus, Henry violated the Judgment of Divorce by selecting an option that did not provide Plaintiff with the benefits awarded to her.

Attempting to override Henry's choice of benefits under the Plan, Plaintiff's first attorney, Terry Williams, submitted the Judgment of Divorce to the Plan administrator on

––––––––––––––––––

[1]The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* (ERISA).

[2]The text reads in full: "[T]hat [Ardella] is hereby irrevocably awarded one-half (1/2) of that pension benefit value accumulated by [Henry] through his employment at Chrysler Corporation from the date of the marriage of the parties on February 15, 1987, to the date of this judgment of Divorce, to be paid to her, with full rights of survivorship, in the same manner as it becomes payable to [Henry] when it becomes payable upon retirement, disability or death of [Henry].  It is expressly provided herein that [Henry] cannot make any election under such pension which would deprive [Ardella] of one-half (1/2) of such benefits when payable."  R. 11 at 73.

[3]The Plan's original name, Chrysler – UAW Pension Plan, first changed to "Chrysler Group LLC – UAW Pension Plan," and now is called "FCA US LLC – UAW Pension Plan."  Appellants' Br. at 1.

December 14, 1994.  On January 18, 1995, a Plan representative called Williams and informed him that the Judgment of Divorce lacked the clerical information required by 29 U.S.C. § 1056(d)(3)(C)[4] to enable the Plan to qualify it as a "qualified domestic relations order" under 29 U.S.C. § 1056(d)(3)(B)(i), and, therefore, the Judgment of Divorce could not override ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1).[5]  Consequently, the Plan denied Plaintiff's request for benefits.  At that time, the Plan also sent a letter conveying the same information, and attached a sample qualified domestic-relations order spelling out the required clerical information.

Plaintiff did not communicate with the Plan again for almost thirteen years, until after Henry had died.  Henry died on November 23, 2007.  Plaintiff called the Plan on January 4, 2008.  During the call Plaintiff (1) told the Plan about the Judgment of Divorce and how it ordered benefits to be paid to her once Henry had retired; (2) said that she would be mailing in the Judgment of Divorce; and (3) admitted to not having a domestic-relations order that satisfied the ERISA clerical requirements.  On February 1, 2008, Plaintiff faxed the Plan a copy of the Judgment of Divorce.  On February 28, 2008, the Plan sent Plaintiff a letter denying her benefits request, on the grounds that the Judgment of Divorce did not have the necessary clerical information, and because "the participant [Henry] does not have a remaining benefit to be assigned to an alternate payee."  R. 11-2 at 201.

---

[4]This provision requires domestic-relations orders to give: (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies. 29 U.S.C. § 1056(d)(3)(C).

[5]ERISA generally provides that pension benefits cannot be assigned or alienated from the plan participant, 29 U.S.C. § 1056(d)(1), even in the face of a court-issued domestic-relations order, *e.g.*, a divorce decree, commanding the plan to assign or alienate benefits. *Id.* § 1056(d)(3)(A). However, ERISA does allow for "qualified domestic relations orders" to override the anti-assignment and anti-alienation provision. *Id.* For a domestic relations order to be qualified, it must: (1) create or recognize an alternate payee, and that payee's right to all or part of a participant's benefits under the ERISA governed plan, *id.* § 1056(d)(3)(B)(i)(I); (2) give enumerated "clerical" information, *id.* § 1056(d)(3)(C); and (3) not require the plan to: (a) provide any type or form of benefit, or any option, not otherwise provided under the plan, *id.* § 1056(d)(3)(D)(i), or (b) provide increased benefits (determined on the basis of actuarial value), *id.* § 1056(d)(3)(D)(ii). Although courts may later override an erroneous qualification determination by the plan, it is the plan, in the first instance, which determines whether a domestic relations order qualifies. *Id.* § 1056(d)(3)(G)(i)(II).

Between 2008 and 2014, Plaintiff, both on her own and with the help of two other attorneys, attempted four more times to have the Plan qualify the Judgment of Divorce, and each time it was denied. In addition to explaining that the Judgment of Divorce did not meet the requirements of 29 U.S.C. § 1056(d)(3)(C), and that there were no remaining benefits to be paid, the Plan also denied benefits on the basis that changing the type of benefit at that time to one with a surviving spouse option was impermissible under the rules of the plan. *See* 29 U.S.C. § 1056(d)(3)(D)(i) (disqualifying domestic-relations orders which "require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan.").

On February 28, 2014, to remedy the original clerical deficiencies in the Judgment of Divorce, Plaintiff, through the efforts of her fourth and current attorney, Jack Schultz, obtained from the Wayne County Circuit Court a *nunc pro tunc* order (the Nunc Pro Tunc Order). The Nunc Pro Tunc Order corrected the Judgment of Divorce by adding the missing "clerical" information required by 29 U.S.C. § 1056(d)(3)(C).

Mr. Schultz submitted the Nunc Pro Tunc Order to the Plan on March 3, 2014. On June 24, 2014, the Plan declined Plaintiff's request for benefits by letter, stating that it had determined that the Nunc Pro Tunc Order was not a qualified domestic-relations order because "[d]ue to the optional form of payment chosen by [Henry] at the time of [Henry's] commencement, there is no survivor benefit. No further payments can be made . . . ." R. 11 at 53.

On February 12, 2015, Plaintiff filed her complaint in the United States District Court for the Eastern District of Michigan, Southern Division. Plaintiff asserted two claims under ERISA: (1) a claim for recovery of pension benefits and (2) a claim for breach of fiduciary duty. Plaintiff later dropped the second claim, and the district court held it waived. Defendants filed a motion for summary judgment, arguing that (1) Plaintiff's claim is barred by the statute of limitations, and (2) the Nunc Pro Tunc Order is not a qualified domestic-relations order because: (a) it provides for a change in the form of benefits not otherwise provided under the Plan, in violation of 29 U.S.C. § 1056(d)(3)(D)(i); and (b) it requires the Plan to pay increased benefits, in violation of 29 U.S.C. § 1056(d)(3)(D)(ii).

On February 17, 2016, the district court granted summary judgment in favor of Plaintiff. In its order, the district court held that: (1) the proper statute of limitations, borrowed from state law, is six years; (2) to the extent that Plaintiff's claim is based on the Plan's denial of benefits based on the Judgment of Divorce, the claim is time-barred because the statute of limitations began to run on February 28, 2008; (3) however, to the extent Plaintiff's claim is based on the Plan's June 24, 2014, denial of benefits based on the Nunc Pro Tunc Order, Plaintiff's claim is timely; and (4) because the Nunc Pro Tunc Order relates back to September 27, 1993, the Plan's compliance with that order does not (a) require the Plan to provide a change in the form of benefits not otherwise provided under the Plan, nor (b) require the plan to pay increased benefits, and therefore the Nunc Pro Tunc Order is qualified and does not violate ERISA.

On timely appeal, Defendants challenge the district court's determinations that Plaintiff's claim is not time-barred, and that the Nunc Pro Tunc Order does not violate ERISA.

## II. JURISDICTION

The district court had jurisdiction over Plaintiff's 29 U.S.C. § 1132 claim for benefits under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. We have jurisdiction over Defendants' appeal under 28 U.S.C. § 1291.

## III. ANALYSIS

Defendants challenge (1) the district court's decision to restart the statute of limitation upon Defendants' denial of benefits under the Nunc Pro Tunc Order in 2014, (2) the district court's ruling that the statute of limitations initially began to run on February 28, 2008, and (3) the district court's ruling that the Nunc Pro Tunc Order is a qualified domestic relations order and does not violate ERISA under either 29 U.S.C. § 1056(d)(3)(D)(i) or (ii). We reverse the district court on the first two issues, and find Plaintiff's claim time-barred. Consequently, we do not reach the question of whether compliance with the Nunc Pro Tunc Order would violate ERISA. The crux of this case is the district court's misapplication of Michigan law regarding the effect of *nunc pro tunc* orders, holding that they can create new substantive rights, such as resetting the statute of limitations.

**A. Effect of the Nunc Pro Tunc Order**

Defendants first challenge the district court's ruling that their June 24, 2014 denial of the Nunc Pro Tunc Order reset the statute of limitations. We review questions of law de novo. *Tri Cty. Wholesale Distrib., Inc. v. Labatt USA Operating Co., LLC*, 828 F.3d 421, 430 (6th Cir. 2016).

Without providing any accompanying analysis or citation of authority, the district court held that to the extent Plaintiff's claim was based on Defendants' denial of the Nunc Pro Tunc Order, Plaintiff's claim was not time-barred, as her suit was filed within six years of that denial. Thus, it seems that the district court either believed that the issuance of a *nunc pro tunc* order gave Plaintiff a new cause of action, or that it reset the statute of limitations. Either scenario misapprehends the effect of *nunc pro tunc* orders under Michigan law.

As in other states, Michigan court orders issued *nunc pro tunc* do not retroactively modify substantive rights declared in older court orders. *See Sleboede v. Sleboede*, 184 N.W.2d 923, 925 (Mich. 1971). Rather, they merely "make [the court's] records speak the truth—to record that which was actually done, but omitted to be recorded." *Id.* at 925 n.6. That is, *nunc pro tunc* orders fix clerical mistakes in old orders. *Nunc pro tunc* orders do not revise the substance of what has transpired, backdate events, or give rise to new substantive rights, including resetting the statute of limitations. *Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016) (finding that Ohio *nunc pro tunc* orders "merely correct[] . . . record[s] to accurately reflect the court's actions . . . not . . . reset[] the statute of limitations . . . ."); *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383-84 (4th Cir. 2012) (holding that *nunc pro tunc* orders "correct mistakes or omissions in the record so that the record properly reflects the events that *actually took place.* [They] may not be used to retroactively record an event that never occurred or have the record reflect a fact that never existed."); *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (holding *nunc pro tunc* orders cannot be used to rewrite history); *Central Laborers' Pension, Welfare and Annuity Fund v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999) ("[T]he only proper office of a *nunc pro tunc* order is to correct a mistake in the records; it cannot be used to rewrite history."); *Walls v. United States*, No. 2:06-CV-12441, 2006 U.S. Dist. Lexis 93850, at *1 (E.D. Mich. Dec. 29, 2006) (same).

Thus, when the Wayne County Circuit Court issued the Nunc Pro Tunc Order, it merely articulated the substantive rights already declared in the Judgment of Divorce in a form that complied with ERISA.  Consequently, the Nunc Pro Tunc Order is treated as if it were the Judgment of Divorce but with clerical mistakes corrected.  It did not bestow on Plaintiff any new, or modify any old, substantive rights.  Therefore, neither the Wayne County Circuit Court's issuance, nor the Plan's rejection, of the Nunc Pro Tunc Order could provide Plaintiff with a new cause of action or have any effect on the statute of limitations.

Furthermore, accepting the district court's view would create an untenable situation regarding submission of domestic-relations orders to pension plans.  Under this view, no matter how long ago a plan denied a domestic-relations order, the denied claimant could circumvent the statute of limitations and revive his cause of action by obtaining and submitting a *nunc pro tunc* version of the denied order to the pension plan, force the plan to reiterate its denial, and effectively reset the statute of limitations.  In such a world, no claim would ever truly be time-barred, but merely waiting for a *nunc pro tunc* order to issue.  Such a system defeats the clearly understood policy goals of statutes of limitations.  *See Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49, (1944) (noting that statutes of limitation are designed "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."); *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999) (stating that statutes of limitation serve to encourage "rapid resolution of disputes").

Therefore, we reverse and hold that the Nunc Pro Tunc Order did not give rise to a new cause of action, or reset the statute of limitations.

**B.  ERISA § 1132(a)(1)(B) Accrual for Purposes of the Statute of Limitations**

Defendants also challenge the district court's ruling on when the statute of limitations began to run on Plaintiff's claim.  The district court found that Plaintiff's claim was barred to the extent it was based on the denial of her benefits under the Judgment of Divorce.  The district court acknowledged that the limitations period begins when a plaintiff discovers, or should discover, a clear repudiation of benefits, citing *Bender v. Newell Window Furnishings, Inc.*,

681 F.3d 253, 272 (6th Cir. 2012), and *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 302 (6th Cir. 2006). However, without any accompanying analysis, the district court determined that the limitations period began on February 28, 2008, when the Plan sent Plaintiff a letter denying her benefits under the Judgment of Divorce for the second time, even though she had already been denied benefits under the same order thirteen years earlier. Despite the earlier denial, and based on the six-year statute of limitations, the court determined that this cause of action became time-barred on February 28, 2014.

Defendants argue that, at the latest, Plaintiff's claim accrued for statute-of-limitations purposes when a Plan representative called Plaintiff's first attorney on January 18, 1995, and informed him that the Plan was denying benefits claimed under the Judgment of Divorce, and therefore, that her claim became time-barred on January 18, 2001. We review mixed questions of law and fact de novo. *Tri Cty. Wholesale Distrib., Inc.*, 828 F.3d at 430.

Although Plaintiff did not specify, we determine that her claim was brought pursuant to § 1132(a)(1)(B), because she seeks "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan or to clarify [her] rights to future benefits under the terms of the plan."[6] 29 U.S.C. § 1132(a)(1)(B). Because ERISA does not explicitly provide a limitations period for § 1132(a)(1)(B) claims, courts fill the statutory gap using federal common law. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367 (1943). When a plan does not itself provide a limitations period, the Sixth Circuit applies "the most analogous state statute of limitations" of the forum state. *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001). Here, the Plan does not provide a limitations period, and the forum state is Michigan.

---

[6]In her complaint, Plaintiff's prayer for relief asks the court, in relevant part, to:

> (1) Declare, adjudge and decree that Defendants are obligated to accept the [qualified domestic relations order] dated February 28, 2014; (2) Declare, adjudge and decree that Defendants are obligated to pay Plaintiff the amount of pension benefits which were due and will become due to her in accordance with her vested, non-forfeitable benefits in the Plan; (3) Order Defendants to provide Plaintiff with all disclosures, reports and other plan information she was entitled to receive and which otherwise was required of Defendants . . . .

R. 1 at 5.

The Sixth Circuit has found that the most analogous Michigan cause of action to a denial-of-benefits claim under § 1132(a)(1)(B) is breach of contract. *See Santino*, 276 F.3d at 776. As the district court properly held, the statute of limitations for a breach-of-contract action under Michigan law is six years. Mich. Comp. Laws § 600.5807 (2016).

Similarly, because ERISA is silent on the matter, federal common law determines when claims accrue under § 1132(a)(1)(B) for purposes of the statute of limitations. *Watkins v. JP Morgan Chase U.S. Benefits Exec.*, 570 F. App'x 458, 460 (6th Cir. 2014) (quoting *Mich. United Food & Commercial Workers Unions & Drug & Mercantile Emps. Joint Health & Welfare Fund v. Muir Co.*, 992 F.2d 594, 599 (6th Cir. 1993)). The Sixth Circuit applies the discovery rule to determine when the limitations period for a § 1132(a)(1)(B) claim starts. *Morrison*, 439 F.3d at 302.[7] Under the discovery rule, "the limitations period begins to run when the plaintiff

---

[7]We note that some district courts in this circuit, and at least one other court of appeals, have misunderstood our precedent regarding what rule we apply for determining when § 1132(a)(1)(B) claims accrue. *See White v. Sun Life Assurance Co. of Can.*, 488 F.3d 240, 246 (4th Cir. 2007), *abrogated on other grounds*, *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604 (2013); *Shiverdecker v. Life Ins. Co. of N. Am.*, No. 3:05-CV-506, 2007 WL 4124478, at *3 (E.D. Tenn. Nov. 19, 2007); *Davidson v. Hartford Life & Acc. Ins. Co.*, No. 4:06 CV 920, 2006 WL 3469689, at *4 (N.D. Ohio Nov. 30, 2006); *Regents of the Univ. of Mich. v. Otis Spunkmeyer, Inc.*, No. 03-72985, 2006 WL 542979, at *2 (E.D. Mich. Mar. 6, 2006). These courts assert that in the Sixth Circuit, § 1132(a)(1)(B) claims accrue for purposes of the statute of limitations upon the "formal denial" of benefits, citing *Stevens v. Emp'r-Teamsters Joint Council No. 84 Pension Fund*, 979 F.2d 444, 451 (6th Cir. 1992), for that proposition. *Stevens* stated, "An ERISA cause of action for benefits under ERISA does not arise until the claim for benefits has been made and *formally denied*," *Stevens*, 979 F.2d at 451 (emphasis added), but did not define "formal denial." Citing *Stevens*, the Fourth Circuit held that the statute-of-limitations period begins for § 1132(a)(1)(B) claims when a claim is "formally denied," which it then defined as upon exhaustion of administrative remedies. *White*, 488 F.3d at 246. The abovementioned district courts likewise assume "formal denial" entails a plaintiff exhausting his administrative remedies. *See Shiverdecker*, 2007 WL 4124478, at *3; *Davidson*, 2006 WL 3469689, at *4; *Otis Spunkmeyer, Inc.*, 2006 WL 542979, at *2.

But the *Stevens* decision was not concerned with the proper accrual date for § 1132(a)(1)(B) claims for statute-of-limitations purposes. Rather, the issue in *Stevens* was "[w]hether the district court possessed jurisdiction over plaintiff's claim under ERISA, 29 U.S.C. §§ 1132, 1144(b)," *Stevens*, 979 F.2d at 449, where the operative acts that led to the denial of benefits occurred prior to the effective date of ERISA, January 1, 1975, *id.* at 455, but the plaintiff did not apply for, and did not receive a denial of benefits from the plan until 1988, after ERISA's effective date, *id.* at 451. To answer this question, the *Stevens* court looked to the ERISA preemption provision, § 1144, which excluded from preemption "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). *Stevens* ultimately concluded that it did not have federal jurisdiction because the plaintiff's claims were not preempted due to § 1144(b)(1). Although the plaintiff's cause of action arose when his claim for benefits was made and formally denied in 1988, the operative acts that led to the denial—plaintiff's failure to make pension contributions for five years—occurred prior to ERISA's effective date. Thus, the statement in *Stevens* regarding when an ERISA claim for benefits "arises" was made in the context of determining the scope of ERISA jurisdiction and preemption, not in deciding when a § 1132(a)(1)(B) claim accrues. *White*, and the district courts mentioned above, erred in relying on *Stevens* as authoritative in determining the proper accrual date of § 1132(a)(1)(B) claims for the statute of limitations. *But see Watkins*, 570 F. App'x at 460 (citing *Stevens*

discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emps.*, 547 F.3d 531, 535 (6th Cir. 2008) (quotations omitted). Thus, clear and unequivocal repudiation of benefits, whether through formal or informal means, causes the claim to accrue for statute-of-limitations purposes. *Morrison*, 439 F.3d at 302.

Under the discovery rule, the statute of limitations for Plaintiff's claim began to run when she was put on notice (formal or informal) that the benefits she sought would be denied to her. *Redmon*, 547 F.3d at 538. This occurred, at the latest, on January 18, 1995, when a Plan representative informed her then-attorney (Williams) that the Judgment of Divorce was not a qualified domestic-relations order, and therefore would not pay Plaintiff benefits in accordance with that judgment. At this point Plaintiff had indisputably been put on notice that the Plan had rejected her claim for benefits, and the clock began to run. In other words, the Plan's first denial on January 18, 1995 was sufficient to put Plaintiff on notice that the Plan had clearly repudiated her claim, and therefore started the statute of limitations. *Redmon*, 547 F.3d at 538; *Morrison*, 439 F.3d at 302. Consequently, Plaintiff's claim became time-barred on January 18, 2001. Thus, the district court's decision to start the clock as of the Plan's second denial of the Judgment of Divorce on February 28, 2008, is erroneous.

---

for the general proposition that § 1132(a)(1)(B) claims accrue upon formal denial of benefits, but nonetheless applying the discovery rule of *Morrison*).

In *Morrison*, we addressed accrual for the purposes of the statute of limitations in § 1132(a)(1)(B) claims for the first time, and adopted the "discovery rule." 439 F.3d at 302–03. There we held that a § 1132(a)(1)(B) claim accrues upon "clear and unequivocal repudiation" of benefits. *Id.* (holding that the plaintiff's deceased husband's benefits claim had been clearly repudiated by the plan sending him a refund check for his first premium payment and an accompanying letter denying his application to convert his portable life insurance coverage to a group policy). We reiterated this rule in *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emps.*, 547 F.3d 531, 538-39 (6th Cir. 2008). There, we also explicitly rejected the argument that a claim accrues only upon exhaustion of administrative remedies. *Id.* at 539-40.

Thus, reading *Morrison* and *Redmon* in conjunction with this circuit's general requirement that ERISA claimants must exhaust their administrative remedies, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998), we are left with two clear rules: (1) the statute of limitations for a claimant's § 1132(a)(1)(B) claim begins to run upon clear and unequivocal repudiation of benefits; and (2) unless excused, claimants must exhaust their administrative remedies before bringing their claims to federal court.

Here, exhaustion of administrative remedies is not at issue because, although Defendants raised exhaustion of administrative remedies as an affirmative defense, they did not pursue the issue in the district court and therefore waived it. *See Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007) (noting how judicially created "prudential" exhaustion requirements, such as administrative exhaustion under ERISA, can be waived, as opposed to Congressionally mandated "jurisdictional" exhaustion requirements, which cannot); *see generally Fallick*, 162 F.3d at 419 (ERISA's administrative exhaustion requirement is discretionary, and therefore not jurisdictional).

At oral argument, Plaintiff asserted that it was inequitable for the court to start the limitations period in 1995, and that the Plan should have done more to alert Plaintiff to her claim and help her file a qualified domestic-relations order in accordance with ERISA. However, the Plan was very explicit in informing Plaintiff that her claim was being denied and provided her with a sample qualified domestic relations order that spelled out all she needed to do to have her claim approved. Furthermore, Plaintiff's exceptionally long delay in bringing her case undercuts her resort to equitable principles. *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) ("Under long-established principles, [a plaintiff's] lack of diligence precludes equity's operation."); *McQuiddy v. Ware*, 87 U.S. 14, 19 (1873) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights.").

Given our conclusion that Plaintiffs claim is barred by the statute of limitations, all other issues on appeal are moot.

## IV. CONCLUSION

The judgment of the district court is reversed and remanded with instructions to dismiss Plaintiff's claim as time-barred.