**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 19a0559n.06**

No. 18-2002

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 05, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BERNARD MULDER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LOCAL 705, INTERNATIONAL | ) | COURT FOR THE WESTERN |
| BROTHERHOOD OF TEAMSTERS, PENSION | ) | DISTRICT OF MICHIGAN |
| FUND, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: MERRITT, MOORE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Bernard Mulder brought this action under the Employee Retirement Income Security Act of 1974 (ERISA), seeking interest on a lump-sum payment of delayed pension benefits, additional benefits to which he alleges he is entitled, and statutory penalties. Defendant-Appellee Local 705, International Brotherhood of Teamsters, Pension Fund (Pension Fund) filed a motion for judgment on the pleadings and the administrative record. The district court granted the Pension Fund's motion, and Mulder appeals.

We **AFFIRM** the district court's denial of Mulder's claim for additional benefits, **REVERSE** the district court's denial of Mulder's claim for prejudgment interest and dismissal of his claim for statutory penalties, and **REMAND** for further proceedings.

**I.**

The Pension Fund is a multi-employer defined-benefit pension plan governed by ERISA and administered by a joint labor-management Board of Trustees. At all relevant times, the Pension Fund has offered a "30 and Out" pension benefit that permits a participant who has accrued at least 30 years of benefit-service credits to retire at any age and elect a $1,000 monthly benefit. (R. 27, PID 652 ¶ 2.) Bernard Mulder is a fully vested participant in the Pension Fund as those terms are defined in the Pension Fund's plan documents.

Mulder first applied for 30-and-Out benefits on November 25, 1986. The Pension Fund denied his application on the basis that the "Pension Fund records show that no collective bargaining agreement was signed after the expiration of [an earlier agreement with Mulder's employer]," and therefore Mulder had not acquired 30 full years of qualifying employment. (*Id*. at PID 652–53.) In December 1990, in response to a request by Mulder, the Pension Fund sent Mulder a booklet entitled "Pension Plus+." (*Id.* at PID 653 ¶ 8.) Mulder again applied for 30-and-Out benefits from the Pension Fund in September 1995. The Pension Fund approved Mulder's application for benefits, but, concluding that Mulder had accrued only 25.42 years of service credits, awarded him an early deferred vested pension benefit of only $387.86 per month. The letter approving Mulder's application did not expressly state that his 30-and-Out benefits were denied, and did not explain Mulder's appeal rights.

Years later, Mulder sought reconsideration of his benefits award. In September 2011, Mulder sent a letter requesting "a copy of the 705 IBT summary benefits plan description," followed by a letter requesting a "Pension Determination Sheet." (*Id*. at PID 654 ¶¶ 13–14). Mulder asserts that the first request included a request for the PensionPLUS booklet. The Pension Fund responded by sending Mulder an "Explanation of Benefits" form. (*Id*. ¶ 15.) On December

16, 2011, the Mid-America Pension Rights Project sent the Pension Fund a letter on Mulder's behalf requesting "a detailed explanation" of how the benefit was calculated and supporting documentation. (*Id.* ¶ 16.) This initiated a two-year process through which the Pension Fund requested, and Mulder provided, additional information regarding Mulder's work and military service to determine whether he was entitled to a greater pension benefit.

On January 24, 2014, the Pension Fund paid Mulder a lump-sum 30-and-Out pension benefit in the amount of $235,446.52. This sum reflected 30 years of benefit-service credits accrued between April 1956 and March 1987 and benefits from April 1, 1987 to December 31, 2013 in the amount of $1,000 per month, less the early deferred pension benefit payments already received. The lump-sum payment did not, however, include interest for the time the benefits were withheld.

On September 26, 2014, Mulder, through his attorney, wrote the Pension Fund raising additional concerns. Mulder asserted that he was entitled to interest on his lump-sum payment, and requested documents establishing "the return on investment that the Pension Fund has secured over [the] twenty six year period" that Mulder was denied full benefits, as well as "documents that establish that Mr. Mulder's Pension Fund was held separately from other funds for purposes of investment." (R. 16-3, PID 260.) The letter also stated, "we believe that the Pension Fund has underpaid Mr. Mulder in the amount of $500.00 per month from April 1, 1987, through the present," and requested all pension plans, amendments to those plans, and pension books covering that period. (*Id.*)

The Pension fund responded on October 27, 2014, enclosing "Copies of the Local 705 I.B.T. Pension Plan documents in effect at the time Mr. Mulder left covered employment in 1986 and when he first commenced payment of his pension benefit in 1995," as well as the summary

plan description, the Pension Fund's "Annual Funding Notices and Notice of Plan Status which were sent to all participants and pension recipients," and correspondence to and from Mulder. (R. 27, PID 655 ¶ 24.) Mulder again demanded interest on the lump-sum 30-and-Out pension benefit. The Pension Fund did not respond.

Mulder filed this action on December 22, 2016. In Count I, Mulder claimed unpaid interest on the retroactive pension benefit payment, requesting an interest rate "equal to the return on investment that the Pension Fund was able to earn" during this period. (R. 1, PID 4 ¶ 27.) In Count II, Mulder claimed statutory damages under 29 U.S.C. § 1132 for the Pension Fund's alleged failure to provide documents establishing the Pension Fund's return on investment.

After the Pension Fund was served with Mulder's complaint, it offered to process an appeal of the non-payment of interest on his retroactive 30-and-Out payment. Mulder agreed. On April 7, 2017, Mulder's counsel appeared in person, and Mulder appeared by telephone, at the Pension Fund's Board of Trustees meeting, and both were given the opportunity to present additional argument in support of Mulder's appeal. On April 13, 2017, the PensionPLUS booklet was delivered to Mulder. This was the first time since 1990 that the Pension Fund provided the PensionPLUS booklet. On May 3, 2017, the Pension Fund informed Mulder's counsel that the Board of Trustees denied Mulder's appeal from the non-payment of interest. The Trustees stated that Mulder's "belated appeals, initiated 16 years after payments commenced, undermine the actuarial soundness of the Pension Fund, which must be able to rely on the benefits in payment that were not timely appealed." (R. 24-1, PID 409.) The Trustees also stated that "[t]he record before the Trustees does not confirm to their satisfaction that Mr. Mulder actually performed covered work in 1956 and 1958." (*Id*. at PID 410).

Mulder filed an amended complaint on June 1, 2017, adding to Count I a claim for an additional pension benefit of $500 per month. Mulder argues that a document he received after the administrative appeal indicates that he is entitled to $1,500 per month, rather than the $1,000 monthly benefit on which the lump sum was based. Mulder also added to Count II an allegation that the Pension Fund failed to timely produce "the appropriate Summary Plan Descriptions for the Plan." (R. 16, PID 156.)

The administrative record was filed on July 21, 2017. Mulder filed a motion for partial judgment on the administrative record regarding his claim for prejudgment interest. The Pension Fund moved for judgment on the administrative record and the pleadings on all claims. The district court granted the Pension Fund's motion, and this timely appeal followed.

## II.

ERISA § 502(a)(1)(B) provides, "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Although the statute does not specifically provide for interest, we have stated that "prejudgment interest may be awarded in an appropriate case under ERISA." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 374–76 (6th Cir. 2015) (en banc) (§ 1132(a)(1)(B) provides for "recovery of benefits and attorney's fees and, potentially, prejudgment interest"). The decision whether to award interest in connection with a § 502(a)(1)(B) claim is left to the discretion of the district court "in accordance with general equitable principles." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 685–86 (6th Cir. 2013) (citation omitted). "An award of prejudgment interest in the ERISA context is compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." *Rochow*, 780 F.3d at 376.

An interest award should "simply compensate a beneficiary for the lost interest value of money wrongfully withheld from him or her." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000).

A.

As an initial matter, the Pension Fund asserts that Mulder's claim for interest fails because § 1132(a)(1)(B) allows for recovery of benefits due under a plan, but here Mulder seeks only the interest on his benefits, which is not itself a benefit listed in the plan. *See Flint v. ABB, Inc.*, 337 F.3d 1326, 1329–30 (11th Cir. 2003) (declining to "recogniz[e] a claim for interest under § 502(a)(1)(B)"); *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999) ("[Plaintiffs] want the interest they could have earned had they been paid the money in a timely fashion and invested it, but interest is not a benefit specified anywhere in the plan, and only benefits specified in the plan can be recovered in a suit under section 502(a)(1)(B)."). *But see Dobson v. Hartford Fin. Servs. Grp., Inc.*, 389 F.3d 386, 395–96 (2d Cir. 2004).

We have not squarely addressed whether § 1132(a)(1)(B) permits a standalone claim for prejudgment interest, but our prior cases present no barrier to Mulder's interest claim. In *Rochow*, we determined that a plaintiff could not seek equitable relief under § 1132(a)(3) in addition to remedies under § 1132(a)(1)(B) when the plaintiff could point to only a single injury caused by wrongfully withheld benefits. 780 F.3d at 371. Central to our holding was the proposition that § 1132(a)(1)(B) offers a means to obtain complete redress for ERISA plaintiffs injured by withheld benefits by permitting a district court to award attorney's fees and prejudgment interest. *Id*. at 371–72. *Rochow* thus implies that, when a plaintiff is not made whole by the overdue payment of benefits, the plaintiff may seek prejudgment interest in a § 1132(a)(1)(B) suit.

In any event, Mulder also challenges the amount of the benefit awarded by the Pension Fund, and therefore the district court's review necessarily encompassed the question whether

Mulder was made whole by the lump-sum payment and, in turn, whether Mulder was entitled to interest.

B.

The district court determined that Mulder was not entitled to prejudgment interest on his 30-and-Out benefits primarily because of Mulder's sixteen-year delay in seeking relief:

> On the one hand, it is true that Mulder did not have the interest value of the money he was underpaid over the years. On the other hand, Mulder did not alert the Pension Fund to the underpayment for at least sixteen years, when he requested information in September 2011. Despite Mulder's lengthy delay, the Trustees cooperated with Mulder and the Mid-America Pension Rights Project over the next two years to compile information and reach the determination to award Mulder a retroactive lump sum to compensate him for thirty years of benefit service credit accrued between April 1956 and March 1987.

> The Sixth Circuit has observed that "[r]elieving defendants from the payment of prejudgment interest would create an incentive for insurers to delay payment and would undercompensate victims by forcing them to absorb expenses incurred as a result of the delay." *Tiemeyer*[*v. Cmty. Mut. Ins. Co.*], 8 F.3d 1094, 1102–03 (6th Cir. 1993) (quoting *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 697 (7th Cir. 1991)). In the case at bar, however, the cause for delay is equally shared by both the Pension Fund, which did not initially grant Mulder a 30-and-Out benefit, and Mulder, who waited at least sixteen years to even broach the issue. The Court finds that the equitable remedy of prejudgment interest is not necessary here to disincentivize the insurer or equalize the competing duties of payment and appealing an adverse decision.

(R. 38, PID 753.) The district court further explained that the Trustees' decision not to award interest to Mulder was not arbitrary or capricious because Mulder did not appeal the 1987 denial or the 1995 award of reduced benefits, and therefore he had not sufficiently protected his rights to justify the harm that the Pension Fund would incur by paying the interest.

Although we have noted that prejudgment interest awards serve to deter pernicious conduct by pension funds, the principal reason courts award interest in ERISA cases is to make the pensioner whole. Our precedent teaches repeatedly that awards of prejudgment interest are compensatory, rather than punitive. *See Tiemeyer*, 8 F.3d at 1102. Accordingly, except in cases

of extreme prejudice, the court should focus on the position the parties would be in absent the withholding, and identify what rate of interest, if any, is necessary to put the parties roughly in that position. *See, e.g.*, *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998) ("Prejudgment interest is not intended to penalize the trustee but serves as compensation for the use of money withheld. Hence, such an award must be made with an eye toward putting the plan in the position it would have occupied but for the breach." (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir. 1992))). To that end, the factors we consider in evaluating a claim for interest generally focus on the loss sustained by the pensioner and the appropriate allocation of funds to compensate for the loss, not on the culpability of the fund. In *Schumacher*, we enumerated a non-exclusive list of such factors, including "the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation." 711 F.3d at 685–87. These factors all serve ERISA's remedial purposes. *Id.* at 686 ("An award that fails to make the plaintiff whole due to an inadequate compensation for her lost use of money frustrates the purpose of ERISA's remedial scheme.").

Here, the district court abused its discretion by declining to award Mulder any interest based on its finding that "the cause for delay is equally shared by both the Pension Fund, which did not initially grant Mulder a 30-and-Out benefit, and Mulder, who waited at least sixteen years to even broach the issue." (R. 38, PID 753.) The district court gave a passing acknowledgment to Mulder's loss of the use of his money, but failed to examine with any particularity the extent of his injury. The district court did not, for example, determine the rate of inflation over the period Mulder was deprived of his money, estimate the increase in the cost of living, or consider any other potential measures of Mulder's economic injury. Nor did it take into account the Fund

administrator's duty "to maintain records with respect to each of his employees sufficient to determine the benefits due," 28 U.S.C. § 1059(a)(1), or any enrichment to the Fund resulting from the use of the money. And the Fund's mere assertion that belated appeals undermine its actuarial soundness is devoid of factual support. As a result, the district court was unable to conclude whether the lump sum, on its own, adequately put Mulder or the Fund in the positions they would have occupied had the Pension Fund paid Mulder's pension benefits when due. We have previously found that the failure to consider such factors warranted remand. *See Drennan*, 977 F.2d at 253 ("Because an award of prejudgment interest is compensatory rather than punitive, the district court should have considered the position of the Class rather than the conduct of GM in arriving at a resolution of this issue. Thus, the denial of prejudgment interest on the damages award is remanded with instructions to support an award or denial of prejudgment interest with findings of fact incorporating its reasons for its decision."). Remand is similarly warranted here.

## III.

Mulder next claims he is entitled to a $500 increase in his monthly 30-and-Out benefit. In support, Mulder cites an undated informational booklet published by the Pension Fund that states:

> PensionPLUS provides a 50% increase in the monthly benefit paid to members who retire at any age for whom the fund has received a minimum of 30 years of contributions on his or her behalf. Any member who chooses to retire under this provision will now be eligible for a minimum benefit of $1,500 a month as compared to the current $1,000 monthly benefit.

(R. 16-5, PID 269.) The booklet states that these benefits are "for active members who retire on or after February 1, 1990." (*Id*. at PID 268.)

The district court dismissed this claim on waiver grounds because Mulder did not appeal his 1995 benefits determination within the plan's 60-day appeal window. Mulder first mentioned the additional $500 benefit in his 2014 letter to the Pension Fund after receiving the lump-sum award. Mulder did not raise this claim in an administrative appeal, and added the claim to this

action in his amended complaint. The district court also noted that Mulder failed to develop any argument in support of his claim for additional benefits despite the district court's specific instructions to do so.

In the alternative, the district court determined that Mulder's claim was time-barred. ERISA does not provide a limitations period for § 1132(a)(1)(B) claims, so courts "fill the statutory gap using federal common law." *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 762 (6th Cir. 2017) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)). When a plan does not define a limitations period, we apply the "most analogous state statute of limitations." *Id*. at 763. We have held that § 1132(a)(1)(B) claims fall under the six-year statute of limitations for Michigan breach-of-contract actions. *Id*. (quoting *Santino v. Provident Life & Accident Ins. Co*., 276 F.3d 772, 776 (6th Cir. 2001)). *See* Mich. Comp. Laws § 600.5807 (2018). We apply the discovery rule to determine when a limitations period begins, according to which "the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Patterson*, 845 F.3d at 763–64 (citation omitted). "Thus, clear and unequivocal repudiation of benefits, whether through formal or informal means, causes the claim to accrue for statute-of-limitations purposes." *Id*. at 764 (citation omitted). The district court found that the Mulder's claim began to accrue in September 1995 when he was awarded the early deferred vested pension benefit, reasoning that he was on notice at that point that the Pension Fund would not be awarding him full benefits.

Mulder offers several reasons why we should reach the merits of his claim for additional benefits. First, he argues that the waiver of his claim for additional benefits should be excused because the Pension Fund did not provide the document explaining the higher benefit—the PensionPLUS benefit booklet—until after his administrative appeal concluded. According to

Mulder, he could not have claimed a benefit of which he was unaware. Second, he argues that the claim is not time-barred because the statute of limitations was not triggered by his 1995 benefit-determination letter. Mulder asserts the 1995 letter did not clearly deny him his 30-and-Out benefits, and did not contain any language regarding his appeal rights. [1] Mulder contends that the limitations period did not begin to accrue until he received his lump-sum 30-and-Out pension benefit on December 30, 2013.

Contrary to Mulder's assertions, the record simply does not show that the Pension Fund withheld the document. In fact, the parties' Joint Statement of Undisputed Material Fact states that the PensionPLUS booklet was sent "[i]n response to a request from Mulder, in December 1990." (R. 27, PID 653 ¶ 8.) A December 7, 1990, letter to Mulder from the Pension Fund states, "Pursuant to your recent request, we have enclosed the following booklets," and listed the "Pension Plus + Booklet" as an enclosure. (R. 24-1, PID 320.) Although the PensionPLUS booklet was not in the administrative record, the letter indicating that it was sent to Mulder was. As a result, his claim that he was unaware of the higher benefit until 2014 appears contradicted by the record.

Further, because Mulder never raised this issue before the Trustees, the claim is administratively unexhausted. *See Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 560 (6th Cir. 2017).

---

[1] Mulder asks us to take judicial notice of the 1995 benefit determination letter and his 2013 letter notifying him of his lump-sum award, which are not in the administrative record and were not reviewed by the district court. He argues that these letters demonstrate that the Pension Fund failed to put him on notice of his appeal rights, and, moreover, were in violation of federal regulations regarding ERISA adverse-benefit determinations. The current regulations, which were in effect at the time of the 2013 letter, require that adverse benefit determinations provide "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action . . . following an adverse benefit determination on review." 29 C.F.R. § 2560.503-1 (2001). The 1995 regulations required that the plan administrator provide written notice that includes "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29 C.F.R. § 2560.503-1(f)(4) (1995). Although Mulder alleges that the letters violate the regulation, he does not appear to assert the regulatory violation as a distinct claim; rather, he contends only that the letters failed to put him on notice of his appeal rights, and therefore his claim should not be deemed waived. Because Mulder's claim for benefits fails on other grounds, however, we deny the motion for judicial notice.

But even were we to reach the merits of this claim, the record shows that Mulder retired too early to claim entitlement to the higher benefit. The PensionPLUS booklet, on which Mulder bases his claim, explained that the $1,500 rate was available to "active members who retire on or after February 1, 1990, at the $76 contribution rate." (R. 16-5, PID 268.) The Pension Fund's December 7, 1990 letter reiterated that the plan improvements in the PensionPLUS booklet "apply only to those participants whose covered employment ended on or after" February 1, 1990. (R. 24-1, PID 320.) Although the plan in effect at the time of the 1995 application is not in the record, the 2014 plan documents confirm that pensioners who retire before February 1, 1990 are not entitled to the $1,500 monthly benefit: "Participants who Retire from Covered Employment between April 1, 1985 and January 31, 1990 and who Retire under a Collective Bargaining Agreement or Participation Agreement with a contribution rate of at least $63.00 per week, shall be entitled to the following monthly Service Pension: . . . $1,000.00." (R. 24-3, PID 564.) Mulder stated in his affidavit that he retired in 1987, and his 1995 benefit application states that his last day of covered employment was May 10, 1986. At oral argument, the parties did not dispute that Mulder retired prior to 1990, and Mulder has offered no convincing argument explaining why he is entitled to the additional benefits.[2] Mulder is therefore not entitled to the higher benefit. The district court properly dismissed this claim, and we affirm.

## IV.

Count II of Mulder's complaint seeks statutory penalties under 29 U.S.C. § 1132(c)(1) for the Pension Fund's alleged failure to timely produce documents. Specifically, Mulder alleges that he requested "documents establishing the return on investment for the Pension Fund from April 1,

---

[2] Mulder argues that the PensionPLUS booklet stated that the additional benefits are available "to many participants who retired between February 1, 1987, and February 1, 1990." (R. 16-5, PID 268.) However, the quoted language clearly refers to a separate benefit adjustment related to cost-of-living increases and is unrelated to the $500 monthly increase for members who retire after February 1, 1990.

1987 through January 24, 2014," which were allegedly never provided, and the PensionPLUS booklet, which was not provided until after this action commenced. (R. 16, PID 156.) The district court dismissed Mulder's claim for return-on-investment information, and Mulder does not appear to appeal that decision here. Thus only the claim regarding the PensionPLUS benefit-improvement booklet remains.

ERISA requires the administrator of an ERISA plan "to maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). ERISA authorizes a penalty of up to $110 per day when a plan fails to provide certain documents that are requested by a beneficiary. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-3. These documents include "the current plan document (including any amendments thereto)," "the latest summary plan description of the plan," funding notices, actuarial reports, and financial statements. 29 U.S.C. § 1021(k)(1). If a plan administrator fails to furnish a summary plan description, the plan participant may request one, § 1024(b)(4), and must allow the administrator 30 days to comply with the request before seeking relief in court, § 1132(c)(1)(B).

Because a district court has discretion in deciding whether to assess penalties under § 1132(c)(1), we review such decisions for abuse of discretion. *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 427–28 (6th Cir. 2007).

Mulder asserts that the Pension Fund failed to provide him with the PensionPLUS booklet, despite his multiple requests, until it was sent via email on April 13, 2017. Although Mulder refers to the PensionPLUS booklet as a summary plan description (SPD) in the briefing below and in his appellate briefs, Mulder conceded at oral argument that the PensionPLUS booklet was not an SPD

and instead argued that the booklet was a "material modification" of the plan that the Pension Fund was required to disclose under ERISA. *See* 29 U.S.C. § 1022(a).

The Pension Fund argued below that the claim for penalties was time-barred because it was made after the two-year statute of limitations for Michigan civil-forfeiture claims expired. *See* Mich. Comp. Laws § 600.5809. The Pension Fund also argued that the claim was made against the wrong party. According to the Pension Fund, Mulder's § 1132(c)(1) claim must be made against the plan administrator—in this case, the Board of Trustees. *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002) ("It is well established that only plan administrators are liable for statutory penalties under § 1132(c)(1)."). Because Mulder charged the Pension Fund itself with violating § 1132(c), the Fund asserts that Mulder cannot recover under that provision.

The district court, however, did not base its ruling on either of the Pension Fund's arguments. Rather, the district court dismissed Count II on the ground that, as a matter of fact, the Pension Fund had sent Mulder copies of all the documents he had requested. The district court cited a letter from Mulder dated September 26, 2014, in which he requested information from the Pension Fund, and an October 27, 2014, response in which the Pension Fund enclosed the SPD and other plan documents. The district court concluded that the record contradicted Mulder's claim:

> To the extent that Mulder now claims that his request for a penalty is based not only on the Pension Fund's failure to provide return-on-investment information but also on the Pension Fund's delay in providing the Summary Plan Description, such claim is not supported by the record. . . . The Pension Fund sent a letter to Mulder's attorney dated October 27, 2014, stating that among its enclosures were "[c]opies of the Local 705 I.B.T. Pension Plan documents . . . along with the Summary Plan Descriptions." In short, Count II is also properly dismissed.

(R. 38, PID 756.)

The district court appears to have misunderstood Mulder's argument; he does not claim that the Pension Fund failed to provide him with the full SPDs, but rather that the PensionPLUS booklet was wrongfully withheld. Although Mulder refers to the booklet as a "Summary Plan Document" in his briefing below, he is clearly describing the PensionPLUS booklet. He stated that he is seeking penalties for "the Summary Plan Description that was wrongfully withheld . . . that establishes the additional $500 per month benefit for 30 and Out participants." (R. 37, PID 732.) The final clause of this sentence is critical, because the only document that addresses the $500 additional benefit is the PensionPLUS booklet. And he cited the PensionPLUS booklet directly in his reply brief to his motion for judgment on the administrative record.

Because the district court erroneously decided Mulder's claim for statutory penalties based on whether the Pension Fund timely provided the SPD, rather than whether the Pension Fund timely provided the PensionPLUS booklet, it abused its discretion in dismissing Count II, and we remand for further consideration of the claim. We take no position on the timeliness of Mulder's claim, whether Mulder named the appropriate party, or whether the PensionPLUS booklet constitutes a "material modification" for the purposes of ERISA's disclosure requirements. We leave these issues for the district court to determine in the first instance on remand.

## V.

For the reasons stated above, we **REVERSE** and **REMAND** with regard to Mulder's claim for prejudgment interest and statutory penalties, and **AFFIRM** as to Mulder's claim for additional benefits.