RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0269p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

RALPH GRAGG,

                *Plaintiff-Appellant*,

     *v.*

UPS PENSION PLAN,

                *Defendant-Appellee*.

⎤
⎟
⎟
⎬  No. 22-3379
⎟
⎟
⎦

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:20-cv-05708—Algenon L. Marbley, Chief District Judge.

Argued: October 20, 2022

Decided and Filed: December 16, 2022

Before: BATCHELDER, GRIFFIN, and KETHLEDGE, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Benjamin K.P. Merry, LAW OFFICES OF TONY C. MERRY LLC, Worthington, Ohio, for Appellant. John Timothy McDonald, THOMPSON HINE LLP, Atlanta, Georgia, for Appellee. **ON BRIEF:** Benjamin K.P. Merry, Tony C. Merry, LAW OFFICES OF TONY C. MERRY LLC, Worthington, Ohio, for Appellant. John Timothy McDonald, THOMPSON HINE LLP, Atlanta, Georgia, for Appellee.

─────────────────

## OPINION

─────────────────

KETHLEDGE, Circuit Judge. The limitations period for an ERISA claim "to recover benefits due" under a plan does not expire before the alleged underpayment on which the claim is based. Here, UPS driver Ralph Gragg received from each of two pension plans a letter whose

particulars contradicted each plan's more general description of the monthly payments that he would receive after turning 65. Eight years later Gragg received his first such payments, which were much lower than he expected. Gragg brought this suit, which the district court held was time-barred because, the court held, Gragg's claim had accrued when he received the plans' letters eight years before. But the letters did not cause the injury upon which Gragg sued; the underpayments did. And before that injury his claim had not accrued. We reverse the district court's dismissal of Gragg's claim.

Gragg worked as a driver hauling freight for 31 years. For the first 26 years, he was an employee of Overnite Transportation Company; for the last five, after UPS acquired Overnite, he was an employee of UPS. In 2008, two years before Gragg retired, UPS reclassified his position from nonunion to union, which meant that two different pension plans—the UPS Pension Plan and the UPS Retirement Plan—would fund his pension.

In June 2010, in response to inquiries from Gragg, each plan sent him information about early-retirement benefits. Those included what each plan called the "Social Security Leveling Option." As described by each plan, that option would increase the beneficiary's monthly benefit before age 65 and thereafter reduce it by the amount of his Social Security benefit, so as to keep the beneficiary's total monthly benefits stable (or "level") throughout his retirement. Gragg selected that option for each plan and gave notice that he would retire on August 1, 2010. On July 12, 2010, each plan sent Gragg a letter reciting the monthly amount that each plan would pay him before and after he turned 65. The amounts recited in each letter showed that, after Gragg turned 65, each plan would reduce his monthly payment by $1754, which was the anticipated amount of his Social Security benefit.

Gragg turned 65 eight years later—in July 2018—whereupon he began receiving a monthly Social Security benefit of $1754. The following month, each plan reduced the amount of Gragg's monthly benefit by the entire amount of his Social Security benefit—for a combined monthly reduction of $3508. As a result, Gragg's overall monthly income declined by $1754, rather than remaining stable. Gragg later sent an email to each plan, saying that "[t]his is not the way the leveling option is supposed to work" and that he thought "an honest mistake was made"

by each plan. Each plan responded with a complicated letter stating that the reduced benefit amount was the correct amount.

Gragg brought this suit against the UPS Pension Plan (which had since merged with the UPS Retirement Plan) in November 2020. (From here we refer to the plans collectively as "the Plan.") Gragg asserted a claim under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B), alleging that—since August 1, 2018—the Plan had paid him $1754 less than he was entitled to each month. The district court dismissed Gragg's claim as time-barred, on the ground that each plan had told him ten years before—in July 2010—the amounts that each would pay him after he turned 65.

We review de novo the district court's dismissal of Gragg's claim. *See Fallin v. Commonwealth Industries, Inc.*, 695 F.3d 512, 515 (6th Cir. 2012). The parties agree that a six-year statute of limitations applies to Gragg's claim, meaning that the claim was timely if it accrued after November 2, 2014. "[F]ederal common law determines when claims accrue under § 1132(a)(1)(B) for purposes of the statute of limitations." *Patterson v. Chrysler Group, LLC*, 845 F.3d 756, 763 (6th Cir. 2017). Under that common law, a § 1132(a)(1)(B) claim accrues "when the plaintiff discovers, or with due diligence should have discovered, *the injury* that is the basis of the action." *Id*. at 764 (cleaned up; emphasis added).

Here, despite the July 2010 letters, Gragg had no injury to discover until August 1, 2018—when the Plan first paid him $1754 less than the monthly amount to which he says he was entitled. That claimed underpayment is what first injured him; before then, the Plan paid him every penny he was owed. Thus, Gragg's claim "to recover benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B), did not accrue before August 1, 2018. His claim is therefore timely.

The Plan resists that conclusion on two grounds. First, the Plan cites *Patterson* for the proposition that a claim may accrue upon a "clear and unequivocal repudiation of benefits," *see* 845 F.3d at 764; and the Plan says that its July 2010 letters amounted to such a repudiation. But the "repudiation" formulation is merely a restatement of the discovery rule as applied in cases where a plan denies the plaintiff's entitlement to benefits altogether. *See, e.g., Morrison*

*v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 302-03 (6th Cir. 2006). The Plan cites no case in which we applied the "repudiation" formulation to determine the timeliness of a claim about benefit *amount*. Repudiation is all-or-nothing—and thus "clear and unequivocal" to a putative beneficiary—in a way that disputes about the amount of benefits owed are not. We decline to apply a "repudiation" rule of accrual here.

Second, the Plan asserts that Gragg could have brought suit in July 2010 "to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). What Gragg had in July 2010, however, was merely two letters, which—if read together and without any preconception that his overall monthly benefits would in fact be "leveled"—would have informed him that, eight years' hence, those same benefits would actually decrease by some $1750. An ERISA claim based on the letters alone would have rested upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up). For example, Gragg might have died before 2018, or the Plan might have caught its mistake, if in fact it made one. Thus, in July 2010, Gragg's claim almost certainly would not have been ripe, which means it would not have been justiciable under Article III. *Id.* And "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). The Plan's mistake throughout its briefing is to conflate a concrete "dispute" with a concrete "injury." Gragg was not injured until the Plan allegedly underpaid him; that is when his claim accrued.

We reverse the district court's judgment and remand the case for proceedings consistent with this opinion.